**STATE**

**v.**

**Justin PROUT.**

**No. 2006–203–C.A.**

Supreme Court of Rhode Island.

June 16, 2010.

Jane M. McSoley, Department of Attorney General, for Plaintiff.

C. Daniel Shcrock, Esq., for Defendant.

Present: SUTTELL, C.J.,
GOLDBERG, FLAHERTY, and
ROBINSON, JJ.

## OPINION

Chief Justice SUTTELL, for the Court.

Following a jury trial, the defendant, Justin Prout, was convicted of unlawful breaking and entering of a dwelling house, assault with a dangerous weapon, and simple assault. The defendant appeals these convictions, arguing that the trial justice erred in denying his motion for a new trial. The defendant contends that the trial justice misconceived or overlooked material evidence pertaining to (1) the trial witnesses' credibility; and (2) the defendant's alleged diminished capacity.

This case came before the Supreme Court pursuant to an order directing the parties to show cause why the issues raised in this appeal should not summarily be decided. After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I

## Facts[1] and Procedural History

This case stems from a violent altercation that occurred in Providence on April 1, 2004, and ultimately led to defendant's arrest. Juliana Martins Lorenzana, one of three complaining witnesses, testified that she was at the home she shared with her two children and her brother, Michael Martins, on the night of the incident. Ms. Lorenzana's friend, Juan Pena, and Mr.

Martins's friend, Felix Ortega, also were at the house that evening. Sometime before 10 p.m., Mr. Pena left to purchase food. At approximately 10 p.m., Ms. Lorenzana was upstairs watching television with her children when she heard a rattling noise at the door of the house. She testified that she went downstairs and opened the door, expecting it to be Mr. Pena returning with the food. Instead, she was surprised to discover that it was defendant—a man with whom she was acquainted, but whom she neither trusted nor liked. At once, Ms. Lorenzana attempted to close the door to bar defendant's entrance into the house. Despite her efforts, however, defendant pushed it open. The defendant allegedly used enough force to cause her to fall backwards onto the stairs and to leave a hole where the door struck the wall.

Ms. Lorenzana testified that, after defendant gained entry into her home, he walked into the living room, where Mr. Ortega was playing video games. She then saw defendant swing a knife at Mr. Ortega, as the latter tried to defend himself. Ms. Lorenzana ran upstairs and called 911. When she came back downstairs, she saw Mr. Ortega run into the kitchen and obtain a knife. Ms. Lorenzana also testified that Mr. Martins, who had been upstairs taking a shower, came downstairs and became involved in the fracas. At one point in the incident, Ms. Lorenzana witnessed defendant forcefully holding Mr. Martins down, and she saw a lot of blood. Ms. Lorenzana further stated that, in the course of the altercation, defendant and Mr. Ortega both dropped their knives. She picked up the knives and brought them upstairs, away from the mêlée. Ms. Lorenzana additionally testified that she

---

1. These facts were adduced from the testimony of the trial witnesses. It should be noted

that defendant disputes several of their statements.

gave the knives to the police after they arrived at her home.

Mr. Ortega also testified about the altercation, and his account largely paralleled that of Ms. Lorenzana. Mr. Ortega stated that defendant was wielding a knife when he entered the house and that defendant "tried to kill [him]" with it. Mr. Ortega candidly admitted that he reacted by retrieving a "bigger" knife from the kitchen and using it against defendant.

Mr. Ortega also indicated that defendant did not have permission to enter the house that night. In fact, he testified that Mr. Martins warned defendant to leave on three separate occasions and then "just kicked him." According to Mr. Ortega, during the brawl that followed, defendant dropped his knife and grabbed a dumbbell, prompting Mr. Ortega to drop his knife and wrest the dumbbell from defendant. Mr. Ortega struck defendant with the dumbbell when defendant began attacking and biting Mr. Martins. Mr. Ortega insisted that he was attempting to defend himself when he wielded the knife and dumbbell against defendant.

Mr. Martins also testified for the state about the events of April 1, 2004, and his testimony was consistent with both Mr. Ortega's and Ms. Lorenzana's accounts. Mr. Martins indicated that he did not give defendant permission to enter the house that evening and, in fact, asked defendant to leave the house several times. Mr. Martins admitted that he then kicked defendant, causing him to drop his knife. He further testified that defendant jumped on top of him and began biting him. In response, Mr. Ortega hit defendant with a dumbbell. Shortly thereafter, the police arrived.

Three Providence police officers testified for the state about the incident. The first to testify was Officer Kevin Costa. Officer Costa testified that when he arrived, Ms. Lorenzana was outside screaming "[h]e's got a knife. He's got a knife. He's going to kill him." Upon entering the home, Officer Costa observed defendant on top of Mr. Ortega[2] "pounding on" him. Officer Costa drew his weapon and ordered the two men to stop fighting. When the men complied, Officer Costa observed that defendant was bleeding from his head. Subsequently, the police arrested defendant and took him to the hospital for treatment of his injuries.[3]

Officer Timothy Pickering also testified about the incident. He stated that Ms. Lorenzana gave him only one knife and that she informed him that it was the knife defendant used during the altercation.

The final witness for the state was Det. James Clift. Detective Clift testified that when he arrived on the scene that evening, he noticed that the house was "quite a mess * * *." Specifically, he mentioned that the furniture was in disarray, there was glass and blood on the floor, a hole in the wall behind the door, and plaster on the floor below the hole. He also indicated that he received one knife from Officer Pickering, but that he did not find any blood or fingerprints on the knife.

Leo Kobayashi, M.D., the emergency-room physician who treated defendant on the night of the incident, testified for the defense about defendant's condition. He stated that defendant was intoxicated

2. According to the complaining witnesses, defendant actually was attacking Mr. Martins.

3. The defendant suffered a 1.5-centimeter laceration on the parietal side of his scalp, requiring six staples; a 3.5-centimeter laceration on his right palm, requiring twelve sutures; and an abrasion to his back. It is undisputed that defendant suffered the most severe injuries.

when he was admitted to the Rhode Island Hospital emergency room at 11 p.m.; his blood-alcohol level was measured at 0.175. Moreover, defendant was uncooperative and verbally abusive; as a result, the hospital staff placed him in restraints and administered antipsychotic medication in an effort to calm him.

On June 14, 2004, defendant was indicted by a grand jury for burglary, assault with a dangerous weapon, and simple assault. A jury trial began on February 8, 2006, and lasted three days. The trial justice instructed the jury on burglary, the lesser-included offense of breaking and entering, assault with a dangerous weapon, and simple assault. The trial justice also *sua sponte* included an instruction regarding defendant's alleged diminished capacity. The jury acquitted defendant of burglary, but it convicted him of breaking and entering, assault with a dangerous weapon, and simple assault.

■■ The defendant made a motion for a new trial on February 14, 2006. At a hearing on the motion on February 21, 2006, defendant argued that the state's witnesses lacked credibility and, therefore, the jury should have rejected their testimony. The trial justice denied defendant's motion, finding the witnesses credible and the evidence sufficient to sustain the convictions. The trial justice noted that the testimony given by the state's witnesses consistently indicated that defendant forced his way into the house and that he was the initial aggressor. Moreover, the trial justice stated that the physical evidence—the hole in the wall and the plaster on the floor—corroborated the complaining witnesses' testimony. The trial justice also mentioned that the testimony consistently indicated that Mr. Ortega acted reasonably in defending himself. Finally, the

trial justice concluded that the jury's decision to acquit defendant of burglary, and instead convict on the lesser-included offense of breaking and entering, demonstrated that the jury understood its instruction and took into account defendant's diminished capacity. The defendant filed a notice of appeal on April 28, 2006.[4] A judgment of conviction was entered on May 2, 2006.

## II

### Standard of Review

■■ When deciding a motion for a new trial, "the trial justice acts as a thirteenth juror and exercises independent judgment on the credibility of witnesses and on the weight of the evidence." *State v. Bergevine*, 942 A.2d 974, 981 (R.I.2008) (quoting *State v. Gomez*, 848 A.2d 221, 234 (R.I.2004)). "[T]he trial justice must (1) consider the evidence in light of the jury charge, (2) independently asses the credibility of the witnesses and the weight of the evidence, and then (3) determine whether he or she would have reached a result different from that reached by the jury." *State v. Cerda*, 957 A.2d 382, 385 (R.I.2008) (quoting *State v. Schloesser*, 940 A.2d 637, 639 (R.I.2007)). If "the trial justice agrees with the jury's verdict or if the evidence is such that reasonable minds could differ as to the outcome," he or she should deny the motion for a new trial. *Id.* "If, however, the trial justice finds that the state [did not] prove the defendant's guilt beyond a reasonable doubt, a new trial must be ordered." *Id.* (citing *Bergevine*, 942 A.2d at 981).

■■ This Court's review of a trial justice's decision on a motion for a new trial is deferential. *State v. Flori*, 963 A.2d 932,

**4.** Although defendant's notice of appeal was filed prematurely, that does not deprive us of appellate jurisdiction. *See State v. Diefenderfer*, 970 A.2d 12, 23 n. 24 (R.I.2009).

937 (R.I.2009). The trial justice's decision is entitled to great weight "if he or she has articulated sufficient reasoning in support of the ruling." *State v. Cardona,* 969 A.2d 667, 672 (R.I.2009) (quoting *State v. Espinal,* 943 A.2d 1052, 1058 (R.I.2008)). If the trial justice sets forth adequate grounds for denying the motion for a new trial, his or her decision will not be overturned by this Court, unless he or she has overlooked or misconceived material evidence or was otherwise clearly wrong. *Id.* at 672–73 (citing *Espinal,* 943 A.2d at 1058).

# III

## Discussion

■ On appeal, defendant argues that the trial justice failed to perform a careful review of the evidence in considering defendant's motion for a new trial. The defendant contends that the testimony of the three complaining witnesses—Ms. Lorenzana, Mr. Ortega, and Mr. Martins—was wholly lacking in credibility and, therefore, could not be credited by any reasonable fact-finder. Specifically, defendant asserts that Ms. Lorenzana's testimony is not credible because she testified that she gave both knives to the police, but Officer Pickering testified that he received only one knife. The defendant suggests that Ms. Lorenzana's version of events was intended to exculpate Mr. Ortega from any criminal responsibility for defendant's injuries. Moreover, defendant insists that Mr. Ortega's testimony was designed to shield himself from criminal charges arising from his actions during the fight and is, therefore, wholly not credible.

After a careful review of the trial justice's ruling, we are satisfied that he performed the correct analysis in deciding defendant's motion for a new trial. The trial justice adequately articulated his reasons for denying defendant's motion. He thoroughly summarized the evidence presented at trial and found that there was "no question that the three principals presented by the [s]tate were credible witnesses." Moreover, the trial justice found that the state produced sufficient evidence to sustain all three convictions.[5] The trial justice concluded that had he been a member of the jury, he "would have voted in the same fashion, that is, to convict the defendant of these charges." The trial justice's findings concerning credibility and sufficiency of the evidence are entitled to great weight and are not clearly erroneous.

■ The defendant further argues that he suffered from a diminished capacity on the night of the incident because of his intoxication and mental illness and, therefore, he could not form the intent required to commit the crimes of which he stands convicted. The doctrine of diminished capacity is a defense that

"recognizes that although an accused was not suffering from a mental disease or defect when the offense was committed sufficient to exonerate him of all criminal responsibility, his mental capacity may have been diminished by intoxication, trauma, or mental disease so that he did not possess the specific mental state or intent essential to the particular offense charged." *State v. Correra,* 430 A.2d 1251, 1253 (R.I.1981).

---

**5.** The trial justice discussed the fact that the second knife was missing, but deemed that fact irrelevant. He explained that nobody denied the existence of a second knife; in fact, all three complaining witnesses openly testified that both defendant and Mr. Ortega had knives. Moreover, he noted that the weapon admitted was clearly the one brandished by defendant. We discern no error in this determination.

The defendant argues that while considering the motion for a new trial, the trial justice misconceived or overlooked material evidence concerning defendant's diminished capacity.

 In Rhode Island, the defense of diminished capacity is available only for specific-intent crimes. *See generally State v. Doyon,* 416 A.2d 130 (R.I.1980). A specific-intent crime is one that

> "most commonly involve[s] the designation of 'a special mental element which is required above and beyond any mental state required with respect to the *actus reus* of the crime.' * * * Thus, when a statute defines an offense only by describing the unlawful act, without further referencing an intent to do an additional act or to achieve a further consequence, the proscribed offense is a general-intent crime." *State v. Sivo,* 925 A.2d 901, 914 (R.I.2007) (quoting 1 LaFave, *Substantive Criminal Law* § 5.2(e) at 354 (2d ed. 2003)).

The trial justice did not overlook or misconceive evidence concerning the defendant's diminished capacity when deciding the motion for a new trial. The trial justice noted that the defendant had a high level of alcohol in his system and was in an uncontrollable state on the night of the incident. The defendant's contention regarding diminished capacity is irrelevant to his convictions of simple assault and assault with a dangerous weapon because they are so-called "general-intent" crimes. The defendant was charged with burglary, which is a specific-intent crime, but he was acquitted on that count. With respect to the conviction of the lesser-included offense of breaking and entering, the trial justice explicitly referred to the defendant's diminished capacity and agreed with the jury's decision to convict the defendant of the lesser-included offense.[6] The trial justice's findings are entitled to great weight, and we discern no error in his decision.

## IV

## Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The papers in the case may be remanded to that court.

Justice INDEGLIA took no part in the consideration or decision of this appeal.

---

6.  In fact, the trial justice inferred that the jury considered the issue of diminished capacity when it deliberated because defendant was acquitted of the specific-intent crime of burglary and, instead, convicted of the general-intent crime of breaking and entering.