STATE

v.

Geornando VARGAS.

No. 2009–304–C.A.

Supreme Court of Rhode Island.

June 23, 2011.

Jane M. McSoley, Department of Attorney General, for State.

Janice M. Weisfeld, Office of the Public Defender, for Defendant.

Present SUTTELL, C.J., GOLDBERG, FLAHERTY, and ROBINSON, JJ.

**OPINION**

Chief Justice SUTTELL, for the Court.

A police surveillance operation at the intersection of Gallup Street and Gordon Avenue in Providence led to the conviction of the defendant, Geornando Vargas, for one count of delivery of a controlled substance. On appeal, the defendant argues that the trial justice erred by denying his motion for judgment of acquittal because the evidence presented by the state amounted to an improper pyramiding of inferences and therefore was legally insufficient to support the defendant's conviction. The defendant further argues that the trial justice erred by denying his motion for a new trial because the justice misconceived the testimony of one of the state's witnesses. This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

**I**

**Facts and Procedural History**

On February 15, 2007, defendant was charged with delivering cocaine, a controlled substance, to Jose L. Andino, in violation of G.L.1956 § 21–28–4.01(a)(4)(i).[1] The pertinent evidence adduced at defendant's trial, which took place in March 2009, is set forth below.

On October 13, 2006, after receiving numerous complaints of street-level drug activity in the area of Gallup Street and Gordon Avenue in Providence, members of the Providence Police Department conducted a surveillance operation in that area. Detectives Carlos Sical and Curt Desautels, both of whom were assigned to the Providence Police Department's Narcotics and Organized Crime Bureau, used a vacant third-floor apartment in a multi-

---

1. The same criminal information also charged Mr. Andino with possession of cocaine, in violation of G.L.1956 § 21–28–4.01(c)(2)(i). Mr. Andino pled nolo contendere to the charge.

family house on Gallup Street as an observation post. Detective Sical observed the street activity, with the aid of binoculars, and communicated his observations to Det. Desautels. Detective Desautels, in turn, immediately conveyed that information to Sergeants Glenn Cassidy and William Dwyer, who were located in a marked police vehicle at a nearby location.

Detective Sical testified that on October 13, 2006, at approximately eleven o'clock in the morning, he observed defendant standing in front of a market that was located at the intersection of Gallup Street and Gordon Avenue. According to the detective, as defendant was standing there, he was approached by Mr. Andino,[2] and the two men engaged in a fifteen-to-twenty-second conversation, after which Mr. Andino left. Then, Det. Sical testified, "less than five minutes" later, Mr. Andino returned from the same direction to which he had gone. According to Det. Sical, as Mr. Andino approached defendant, he "noticeabl[y]" sped up his walk and "reach[ed] into his back pocket" with "his left hand." The detective observed that Mr. Andino retrieved, from his "rear left pocket, what appeared to be [United States] currency" and "clenched [it] in his hand as he approached [defendant]." Detective Sical testified that Mr. Andino then handed the currency to defendant, who "took the money" and, with "a cupped hand," "handed [Mr.] Andino what [Det. Sical] suspected to be narcotics."[3] The detective acknowledged that he did not see what defendant handed to Mr. Andino, but he testified that, based on the location and the secrecy of the transaction, he suspected it to be drugs. Detective Sical further testified that the way the exchange occurred was "consistent with what [he has] seen numerous times in the past."[4] Detective Sical testified that "immediately" following this "[f]ive second[ ]" interaction between defendant and Mr. Andino, Mr. Andino left in the same direction from which he had come. The detective further testified that defendant "remained at the intersection for a short period of time, a couple of minutes," and that he then "entered a vehicle" that "drove up Gordon [Avenue] towards Oxford [Street]."

Not more than three minutes after receiving all this information from Det. Desautels, Sgts. Cassidy and Dwyer stopped Mr. Andino at the intersection of Lenox Avenue and Broad Street.[5] Sergeant Cassidy then seized "one small bag of what appeared to be crack cocaine [from Mr. Andino's] right pants pocket"[6] and took him into custody.

Ten to fifteen minutes after the exchange between defendant and Mr. Andino, police officers stopped the vehicle in which defendant was traveling as a passenger, removed defendant from the vehicle, and arrested him. The defendant was carrying $58.50 at the time of his arrest; no drugs, however, were found on his person or in the vehicle.

---

2. Detective Sical testified that Mr. Andino was wearing an exercise suit and a "very distinct [purple] hat" with a "feather in it."

3. Detective Sical testified that he observed this exchange, aided by binoculars, from a distance of approximately one hundred feet, or slightly more.

4. Detective Sical testified that he has been involved in "hundreds" of drug investigations and has observed "close to two hundred" drug sales.

5. Sergeants Cassidy and Dwyer identified Mr. Andino based on Det. Desautels's description of his "very distinct" outfit.

6. The seized substance tested positive for cocaine.

Mr. Andino testified for the defense.[7] Mr. Andino testified that on October 13, 2006, he walked to the area of Gallup Street while on a break from work at Stanley's Auto Repair on Broad Street. According to Mr. Andino, as he was walking to a market located on Broad Street to get a soda, he encountered a friend who gave him $20 to buy drugs for her. Mr. Andino testified that he took this money and went to another market, the one located on the corner of Gallup Street and Gordon Avenue, where he got change for the $20. Mr. Andino testified that he saw defendant as he was entering the market and said hello to him, and that he "went by" defendant again as he was leaving the market. Mr. Andino denied giving defendant any money or receiving any drugs from him. He testified that he then walked half a block up Gordon Avenue and went inside a house where he bought "a 20 piece" for $15, keeping $5 for himself "[f]or doing the girl a favor." Then, Mr. Andino testified, he headed toward Lenox Avenue to make the delivery to his friend, but was arrested, on the corner of Lenox Avenue and Broad Street, before he reached his destination.

After the state rested, and again after the close of all evidence, defendant moved for judgment of acquittal. In doing so, defendant argued that the state's case against him was "based on a pyramiding of inferences." After the close of all evidence, the trial justice reviewed the evidence in the light most favorable to the state. He found that the state had presented sufficient evidence, by way of the testimony of the four police officers, to meet its burden on a motion for judgment of acquittal, and he accordingly denied defendant's motion.

On March 11, 2009, the jury found defendant guilty of delivery of a controlled substance.[8] On March 19, 2009, a hearing was held on defendant's motion for a new trial. At that hearing, defendant again argued that the state's evidence consisted of "a pyramiding of inferences." The defendant pointed out that Det. Sical admitted, during his testimony, that he did not actually see any drugs change hands between defendant and Mr. Andino. Despite that, defendant asserted, the state drew an inference that a drug exchange had occurred. The defendant, quoting *State v. Caruolo*, 524 A.2d 575, 582 (R.I.1987), argued that such an inference was improper because it "rest[ed] upon an ambiguous fact that is equally capable of supporting other reasonable inferences clearly inconsistent with guilt." According to defendant, other inferences were then pyramided on top of the initial improper inference and, therefore, the state failed to prove its case beyond a reasonable doubt.

After articulating the standard on a motion for a new trial, the trial justice reviewed all of the evidence in detail. The justice then assessed the credibility of the witnesses. He noted Det. Sical's experience in the area of narcotics investigations and the fact that "the actual delivery [was] observed, folded up money from Andino to the defendant and then * * * the clenched hands from the defendant to Andino." The trial justice found that all the state's witnesses were "reliable [and] credible"

---

7. During his testimony, Mr. Andino admitted to various criminal convictions, including convictions for drug-related crimes.

8. The jury returned a guilty verdict an hour after reporting that it was hung and receiving an *Allen* charge from the trial justice. An *Allen* charge is "[a] supplemental jury instruction given by the court to encourage a deadlocked jury, after prolonged deliberations, to reach a verdict. *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896)." Black's Law Dictionary 87 (9th ed. 2009).

and that it was reasonable for the jury to find them as such. With respect to Mr. Andino, however, the trial justice did not find his testimony to be credible and stated that he thought the jury "didn't give much weight to what he had to say." With respect to defendant's "pyramiding-of-inferences" argument, the trial justice reasoned that "the jurors have a right to make inferences" and that the inferences in this case "[were] not that great." The justice noted as follows:

"There is an observation of a meeting and transaction between the defendant and Andino. And then there's an indication that something took place, passing of something from Andino to the defendant, passing from the defendant of something to Andino. Then from one to three minutes, he arrests Andino. Those are inferences, but those are reasonable inferences that one can make. That is not conjecture or speculation of just making a wild reach to come up with something plausible but not realistic. So from that point of view, I don't see this as a pyramiding inference that the defendant would suggest."

Ultimately, the trial justice ruled that "the [s]tate * * * produced sufficient evidence which prove[d] beyond a reasonable doubt that the defendant committed the crime for which he had been convicted," and he accordingly denied defendant's motion for a new trial.

■ On June 5, 2009, the trial justice sentenced defendant to six years at the Adult Correctional Institutions, with six months to serve and the remainder suspended, with probation. The defendant filed notices of appeal on June 17 and June 24, 2009, and the judgment of conviction and commitment subsequently was entered on June 30, 2009.[9]

## II

## Discussion

### A

### Motion for Judgment of Acquittal

■ The defendant first argues on appeal that the trial justice should have granted his motion for judgment of acquittal because the evidence presented by the state "amount[ed] to nothing more than an improper pyramiding of inferences" and therefore was "legally insufficient to support [defendant's] conviction." To support this argument, defendant points to the testimony of Det. Sical, who defendant says testified that "he did not actually see [defendant] give drugs to Mr. Andino," as well as to the testimony of Mr. Andino, who defendant says testified that "he obtained the drugs found in his possession from a source other than [defendant]." The state responds that the evidence presented in this case supports an inference of guilt, and that "it was eminently reasonable for the jury to infer that the cocaine was the subject of the transaction between the two men."

■ In reviewing the denial of a motion for judgment of acquittal, "we apply the same standard as that applied by the trial justice; namely, we 'must view the evidence in the light most favorable to the state, * * * giving full credibility to the state's witnesses, and draw therefrom all reasonable inferences consistent with guilt.'" *State v. Caba*, 887 A.2d 370, 372 (R.I.2005) (quoting *State v. Higham*, 865 A.2d 1040, 1048 (R.I.2004)). "If the totali-

---

9. Although defendant's notices of appeal were filed before the entry of judgment, "this Court treats [them] as if [they] had been filed after the entry of judgment." *See State v. Hesford,* 900 A.2d 1194, 1197 n. 3 (R.I.2006) (quoting *Dovenmuehle Mortgage, Inc. v. Antonelli,* 790 A.2d 1113, 1114 n. 1 (R.I.2002)).

ty of the evidence so viewed and the inferences so drawn would justify a reasonable juror in finding a defendant guilty beyond a reasonable doubt, the motion for a judgment of acquittal must be denied." *State v. Kaba,* 798 A.2d 383, 397 (R.I.2002) (quoting *State v. Snow,* 670 A.2d 239, 243 (R.I.1996)).

■ "To find a defendant guilty of delivering a controlled substance[,] the state must prove beyond a reasonable doubt: (1) that there was an unlawful delivery of a controlled substance and (2) that defendant was the one who made the unlawful delivery." *State v. Rodriguez,* 742 A.2d 728, 732 (R.I.1999). At defendant's trial, the state presented the testimonies of four police officers, each of whom participated in the October 13, 2006 surveillance operation at the intersection of Gallup Street and Gordon Avenue, an area of Providence known to the police officers for street-level drug activity. One of the officers, Det. Sical, testified in detail about his observations of the interaction between defendant and Mr. Andino. He testified that the two men engaged in a brief conversation, after which Mr. Andino left, only to return a few minutes later. Detective Sical further testified that he then observed Mr. Andino approach defendant in a rushed manner and hand him currency, in return for which defendant handed something to Mr. Andino. Although Det. Sical admitted that he did not see what defendant handed to Mr. Andino, he testified that, based on the location and the secrecy of the transaction, as well as on his experience conducting drug investigations, he suspected that defendant handed Mr. Andino drugs. Further evidence adduced at trial established that minutes after this transaction took place, Mr. Andino was apprehended carrying a small bag of cocaine.

■■ The state did not present evidence of anyone who had observed exactly what defendant may have handed to Mr. Andino. This Court unequivocally has made it clear, however, that the state can rest its entire case upon circumstantial evidence alone. *State v. Simpson,* 611 A.2d 1390, 1394 (R.I.1992); *Caruolo,* 524 A.2d at 581. In fact, "no distinction is to be drawn between circumstantial and direct evidence" because both "are equally probative of guilt." *Caruolo,* 524 A.2d at 581, 582. Given this, and upon our review of the record in this case in the light most favorable to the state, we are satisfied that the state produced sufficient evidence from which a reasonable juror could infer beyond a reasonable doubt that defendant unlawfully delivered a controlled substance to Mr. Andino.

■ The defendant argues that his motion for judgment of acquittal should have been granted because the state's case constituted "an improper pyramiding of inferences." The defendant's argument lacks merit. We previously have held that "it is possible for the state to prove guilt by a process of logical deduction, reasoning from an established circumstantial fact through a series of inferences to the ultimate conclusion of guilt." *Caruolo,* 524 A.2d at 581–82. It is only when, during this deduction process, "the initial inference in the pyramid rests upon an ambiguous fact that is equally capable of supporting other reasonable inferences clearly inconsistent with guilt," that "[t]he pyramiding of inferences * * * becomes speculative * * * and thus insufficient to prove guilt beyond a reasonable doubt." *Id.* at 582. Here, the state did not rest its case solely on the inference that defendant handed drugs to Mr. Andino, as defendant suggests. Rather, the state put forth evidence that Mr. Andino approached defendant in a rushed manner and handed him currency, and that defendant handed something to Mr. Andino in return. Al-

though Det. Sical, who observed this transaction, admitted that he did not see what defendant handed to Mr. Andino, he testified that, based on the location and the secrecy of the transaction, as well as on his experience, he suspected that defendant handed Mr. Andino drugs. The state also proved that not more than three minutes after this transaction took place, Mr. Andino was apprehended with a small bag of cocaine in his pocket. We are thus of the opinion that, "rather than deducing guilt from an ambiguous circumstantial fact, the state established a pattern of corroborating circumstances" sufficient to justify a reasonable juror in finding defendant guilty beyond a reasonable doubt. *See id.* We therefore affirm the trial justice's denial of defendant's motion for judgment of acquittal.

## B

### Motion for New Trial

■ The defendant's second contention on appeal is that the trial justice erred in denying his motion for a new trial because the justice misconceived the testimony of one of the state's witnesses. Specifically, defendant asserts that the trial justice incorrectly remarked that "the actual delivery [was] observed" by Det. Sical, whereas Det. Sical actually testified "that he never saw any drugs change hands." The state responds that "the trial justice set forth ample reason for his decision to deny the motion for a new trial" and did not "misconceive[ ] or overlook[ ] material evidence in doing so."

■ When ruling on a motion for a new trial, "the trial justice acts as a thirteenth juror and exercises independent judgment on the credibility of witnesses and on the weight of the evidence." *State v. Prout,* 996 A.2d 641, 645 (R.I.2010) (quoting *State v. Bergevine,* 942 A.2d 974,

981 (R.I.2008)). "[T]he trial justice must (1) consider the evidence in light of the jury charge, (2) independently assess the credibility of the witnesses and the weight of the evidence, and then (3) determine whether he or she would have reached a result different from that reached by the jury." *Id.* (quoting *State v. Cerda,* 957 A.2d 382, 385 (R.I.2008)); *see also State v. Guerra,* 12 A.3d 759, 765 (R.I.2011). The trial justice must deny the motion for a new trial "[i]f 'the trial justice agrees with the jury's verdict or if the evidence is such that reasonable minds could differ as to the outcome.' " *Prout,* 996 A.2d at 645 (quoting *Cerda,* 957 A.2d at 385). However, if the trial justice does not agree with the jury's verdict, he or she must "embark on a fourth analytical step." *Guerra,* 12 A.3d at 765. This step requires the trial justice to "determine whether the verdict is against the fair preponderance of the evidence and fails to do substantial justice." *Id.* at 765–66 (quoting *State v. Rivera,* 839 A.2d 497, 503 (R.I.2003)). "If the verdict meets this standard, then a new trial may be granted." *Id.* at 766 (quoting *Rivera,* 839 A.2d at 503).

■ "This Court's review of a trial justice's decision on a motion for a new trial is deferential." *Prout,* 996 A.2d at 645. This is because a trial justice is "present during all phases of the trial, [and] is in an especially good position to evaluate the facts and to judge the credibility of the witnesses." *Guerra,* 12 A.3d at 766 (quoting *State v. Texieira,* 944 A.2d 132, 141 (R.I.2008)). Thus, when "the trial justice has articulated a sufficient rationale for denying a motion for a new trial, the decision will be given great weight" and we will disturb it only "if the trial justice has overlooked or misconceived material evidence relating to a critical issue or if the justice was otherwise clearly wrong."

*State v. Banach,* 648 A.2d 1363, 1367 (R.I. 1994).

Upon reviewing the record in this case, we are of the opinion that the trial justice did not misconceive the evidence when ruling on the defendant's motion for a new trial. Although the defendant asserts that the trial justice incorrectly remarked that "the actual delivery [was] observed" by Det. Sical, his assertion takes the trial justice's statement out of its proper context. At the hearing on the defendant's motion for a new trial, the trial justice remarked that "the actual delivery [was] observed, folded up money from Andino to the defendant and then * * * the clenched hands from the defendant to Andino." Simply put, this statement does not demonstrate any misconception by the trial justice of the evidence that was presented at trial. The "actual delivery" that the trial justice was referring to was Mr. Andino giving the defendant money, and the defendant giving Mr. Andino something with "clenched hands." The trial justice's observation was entirely consistent with Det. Sical's testimony. Furthermore, in rejecting the defendant's "pyramiding-of-inferences" argument, the trial justice explicitly acknowledged that the state drew an inference with respect to the nature of the exchange between the defendant and Mr. Andino. The trial justice reasoned, however, that "the jurors have a right to make inferences" and that the inferences in this case "[were] not that great." Thus, it is clear that the trial justice did not misconceive the evidence in this case. We hold, therefore, that the trial justice did not err in denying the defendant's motion for a new trial.

### III

### Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The record of the case shall be remanded to the Superior Court.

Justice INDEGLIA did not participate.