April 23, 2019

**Supreme Court**

No. 2017-164-M.P.
(P2/13-2025A)

State                           :

v.                              :

Francisco Guerrero.             :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Tel. 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State                     :

v.                     :

Francisco Guerrero.        :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Robinson, for the Court.**  On May 1, 2017, the defendant, Francisco Guerrero, petitioned this Court for the issuance of a writ of certiorari to allow him to appeal a December 1, 2015 judgment of conviction on criminal charges relating to an altercation that occurred in September of 2012.  (A jury had found him guilty on June 29, 2015, and the trial justice thereafter denied his motion for a new trial.)  On May 18, 2017, we granted the petition for a writ of certiorari.

Before this Court, defendant contends that the trial justice overlooked and misconceived material evidence and was otherwise clearly wrong in denying his motion for a new trial, asserting that the state did not meet its burden of proving beyond a reasonable doubt that he did not act in self-defense.

This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this case should not be summarily decided.  After a close review of the record and careful consideration of the parties' arguments (both written and oral), we are satisfied that cause has not been shown and that this case may be decided at this time.

1

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I

## Facts and Travel

On the afternoon of September 1, 2012, there was an altercation between two taxi drivers, defendant and one Abdoylaye Diop, outside the Providence Amtrak station.[1] Following the altercation, Mr. Diop was taken from the scene and admitted to Rhode Island Hospital for the treatment of injuries which he sustained during the altercation.

On July 11, 2013, the state filed a criminal information, charging Mr. Guerrero with: (1) assault with a dangerous weapon, to wit, a knife, in violation of G.L. 1956 § 11-5-2; (2) assault and battery resulting in serious bodily injury, in violation of § 11-5-2; and (3) wearing or carrying concealed on his person a knife having a blade of more than three inches in length, in violation of G.L. 1956 § 11-47-42.

The defendant was tried before a jury in Providence County Superior Court on June 24, 25, 26, and 29, 2015. We relate below the salient aspects of what transpired at that trial.

## A

## The Testimony at Trial

### 1. The Testimony of Abdoylaye Diop

Mr. Diop testified that, on September 1, 2012, in the course of his employment as a taxi driver, he went to the Amtrak station in order to pick up a fare. He stated that he parked his taxi in the line of taxis and then went to join two of his taxi driver friends who were sitting on a nearby cement wall.

---

[1]     Admitted into evidence at the trial was a surveillance tape from a video camera at the Amtrak station. (Although the camera was located at a considerable distance from the site of the fracas and the tape was grainy in quality, it does nonetheless constitute some evidence of what transpired.)

2

Mr. Diop further testified that defendant, with whom Mr. Diop stated he had some familiarity, was also in the taxi line at the Amtrak station that day.[2] Mr. Diop described defendant as being shorter and older than he. Mr. Diop stated that, on the day in question, after he had been sitting on the wall for "like, one to two minute[s]," defendant, who was standing beside his own taxi, pointed toward Mr. Diop and said: "You. Hey. Why are you looking at me?" Mr. Diop testified that the three men on the wall asked defendant to whom he was speaking and that defendant pointed at Mr. Diop and said: "You. You know who I'm talking to. You. Why are you looking at me? You know I don't like you." Mr. Diop testified that he responded to defendant: "Do you own my eyes? I can look wherever I want to look." He testified that he then rose from the cement wall and that he and defendant walked toward each other while he repeatedly asked defendant: "Do you own my eyes?"

Mr. Diop further testified that, when the two men had closed the distance between them, he pushed defendant with both hands, employing sufficient force that defendant "moved a little bit." Mr. Diop stated that, at some point during that altercation, defendant stabbed him in the stomach with a knife. Mr. Diop further testified that, after defendant had stabbed him in the stomach, defendant also stabbed him in his left leg. According to Mr. Diop, defendant stabbed him in the leg when he began kicking defendant's hand in an attempt to get away from the knife that he realized defendant was wielding.

Mr. Diop proceeded to testify that another taxi driver, a man he identified as William, inserted himself between defendant and Mr. Diop, pointed out to Mr. Diop that he was bleeding

---

[2] Mr. Diop testified that, a few days before September 1, 2012, he had intervened in an argument between defendant and another taxi driver after defendant acted in a way that did not conform to the protocol of the taxi line at the Amtrak station. Mr. Diop stated that, later that same day, he saw Mr. Guerrero in the bathroom of the Omni Hotel. According to Mr. Diop, they spoke about the taxi line protocol.

from the stomach, and physically separated the two men. Mr. Diop testified that defendant then entered his taxi and drove away. Mr. Diop further testified that, after defendant drove away, he was in pain, bleeding from wounds in his stomach and his leg, and eventually losing consciousness. Mr. Diop stated that he called for emergency medical personnel, who arrived on the scene and took him to Rhode Island Hospital.

It was further Mr. Diop's testimony that he underwent several surgical procedures as a result of the altercation. Mr. Diop stated that he has permanent scars as a result of the wounds which defendant inflicted upon him; and he even went so far as to display to the jury a surgical scar running down his abdomen during his testimony.

## 2. The Testimony of Francisco Guerrero

The defendant testified[3] that, prior to September 1, he had seen Mr. Diop in "different places where you would pick up people" because they had both been employed as taxi drivers in Providence for some time. The defendant further testified that, prior to the date of the altercation with Mr. Diop, he had been told by fellow taxi drivers Jose Lizardo, William Toribio, and Kenny Guzman, that Mr. Diop was "problematic."

The defendant also testified that, on September 1, 2012, Mr. Diop came up to him, "almost running," and defendant asked him: "Why are you looking at me like that?" The defendant further testified: "[Mr. Diop] pushed me right away. He started kicking me, and I was afraid for my life." He also testified that, while running at him, Mr. Diop said: "I'm going to kill you. I'm going to kill you. I'm going to kill you." He additionally testified as follows:

> "So he kicked me right here, and he kicked me right here in the ribs, and he knocked my glasses off (indicating). I lost my breath, and I couldn't really see him anymore.

---

[3] The defendant testified through an interpreter. He stated that he can speak some English ("the basics, not too many words").

4

"* * *

"I tried to take the knife out, and I lunged to him, and I hit right here
in the stomach, and he kept on kicking me."

The defendant testified that he "tried to get away, but [Mr. Diop] cornered me in a way that he would keep on kicking me, and I couldn't." He thereafter testified that, during the altercation, Mr. Diop "had me surrounded, cornered, telling me that he was going to kill me." The defendant added that, after a third man interrupted the scuffle, defendant entered his taxi and drove away. When asked on redirect examination why he had the knife in his possession, defendant testified as follows:

"I've had that knife for about, almost eight years. I had it in my
backpack for when I was peeling an orange, and I forgot about it,
and I put it here in my backpack."

### 3. The Testimony of William Toribio and Jose Lizardo

William Toribio testified that, prior to September of 2012, he had told defendant to "watch out" for Mr. Diop "because Mr. Diop has had problems with other people * * *." He also testified that, on September 1, 2012, he was in his taxi in the Amtrak station line, texting someone while waiting for a fare. He stated: "[W]hen I looked up, I saw Mr. Diop attacking Mr. Guerrero, and I also saw him kicking Mr. Guerrero." Mr. Toribio further testified that he exited his vehicle and approached the two men, intending to intervene; he added that he heard Mr. Guerrero say, "Back up. Back up." He further stated that he did not hear Mr. Diop say anything.

Jose Lizardo likewise testified that he was present that day and witnessed the altercation, but he stated that he could not understand what either man was saying.

5

**B**

**The Jury Verdict and the Subsequent Motion for a New Trial**

On June 29, 2015, the parties having rested, the trial justice instructed the jury. Included among the instructions was one concerning self-defense. Neither party objected to the jury instructions. Later on the same day, the jury returned a guilty verdict as to all three counts.[4]

On August 31, 2015, a hearing was held on defendant's previously filed motion for a new trial. The defendant contended that the jury's verdict should be overturned because the state had failed to prove beyond a reasonable doubt that he had not acted in self-defense. The defendant specifically requested that the trial justice, in his role as the metaphorical thirteenth juror, consider defendant's arguments as to the use of excessive force and as to the duty to retreat.

After reviewing in detail his jury instructions as well as the conflicting witness testimony and the video evidence, the trial justice stated that he would have reached the same conclusion as the jury did; accordingly, he denied the motion for a new trial. Subsequently, on October 22, 2015, the trial justice sentenced defendant as follows: on Count Two, assault and battery resulting in serious bodily injury, ten years, with three years to serve and the balance suspended, with probation; and, on Count Three, possession of a knife with a blade of more than three inches, one year, to be served concurrently.

**II**

**Standard of Review**

When addressing a motion for a new trial based upon the weight of the evidence, "the trial justice acts as a thirteenth juror and exercises independent judgment on the credibility of witnesses

---

[4] Count One, assault with a dangerous weapon, was dismissed pursuant to Rule 48(a) of the Superior Court Rules of Criminal Procedure, after the jury rendered its verdict and before defendant was sentenced.

and on the weight of the evidence." *State v. Prout*, 996 A.2d 641, 645 (R.I. 2010) (internal quotation marks omitted). As we have frequently stated, the trial justice must then: "(1) consider the evidence in light of the jury charge, (2) independently assess the credibility of the witnesses and the weight of the evidence, and then (3) determine whether he or she would have reached a result different from that reached by the jury." *State v. Silva*, 84 A.3d 411, 416 (R.I. 2014) (internal quotation marks omitted); *see also State v. Espinal*, 943 A.2d 1052, 1058 (R.I. 2008); *State v. Morales*, 895 A.2d 114, 121 (R.I. 2006). After carrying out that analysis, if "the trial justice agrees with the jury's verdict or if the evidence is such that reasonable minds could differ as to the outcome, he or she should deny the motion for a new trial." *Prout*, 996 A.2d at 645 (internal quotation marks omitted). However, if the trial justice disagrees with the jury's verdict or does not believe that reasonable minds could differ as to the outcome, he must conduct a fourth step of analysis in order to determine "whether the verdict is against the fair preponderance of the evidence and fails to do substantial justice." *State v. Diaz*, 159 A.3d 1053, 1061 (R.I. 2017) (internal quotation marks omitted).[5]

This Court accords the trial justice's decision on a motion for a new trial great deference due to the fact that "a trial justice, being present during all phases of the trial, is in an especially good position to evaluate the facts and to judge the credibility of the witnesses." *Id.* at 1062 (internal quotation marks omitted). Accordingly, "[a]bsent clear error and absent a determination by this Court that the trial justice overlooked or misconceived material and relevant evidence [relating] to a critical issue in the case, we will defer to the trial justice's ruling." *State v. Imbruglia*, 913 A.2d 1022, 1028 (R.I. 2007) (internal quotation marks omitted). In providing a record for this

---

[5] As will be made clear *infra*, the trial justice in this case had no need to reach this fourth step in the analytical process.

Court to review, a trial justice "need only cite evidence sufficient to allow this [C]ourt to discern whether the justice has applied the appropriate standards." *State v. Mitchell*, 80 A.3d 19, 30 (R.I. 2013) (internal quotation marks omitted). The trial justice need not provide more than "a few sentences of [his or her] reasoning on each point." *State v. Muralles*, 154 A.3d 925, 932 (R.I. 2017) (internal quotation marks omitted).

## III

### Analysis

The defendant contends on certiorari that the trial justice erred in denying his motion for a new trial because, in defendant's view, the trial justice overlooked and misconceived material evidence when he agreed with the jury's verdict.[6] He argues "that the trial justice did not take into account that Mr. Guerrero had to appreciate that he knowingly had an opportunity to retreat in safety" and that, therefore, the verdict went against the weight of the evidence presented.

It is clear from our review of the record that the trial justice properly completed each of the necessary analytical steps. First, the trial justice considered the evidence in light of the jury charge; he discussed the lengthy instruction that he had given to the jury regarding self-defense, including his specific instruction to the jury that one may not use excessive force. He also noted that he had "indicated there is a duty to retreat * * *. And there is a test of the defendant's state of mind, and it is in the consideration as to whether or not defendant's actions were justified." He concluded

---

[6]     It is our considered judgment that defendant's contention on appeal that the trial justice did not properly consider the excessive force question has been waived. *See State v. Day*, 925 A.2d 962, 974 n.19 (R.I. 2007); *Wilkinson v. State Crime Laboratory Commission*, 788 A.2d 1129, 1131 n.1 (R.I. 2002) ("Simply stating an issue for appellate review, without a meaningful discussion thereof or legal briefing of the issues, does not assist the Court in focusing on the legal questions raised, and therefore constitutes a waiver of that issue."). Although defendant alludes to that issue in his briefing before this Court, he makes no meaningful argument with respect to the excessive force issue; instead, he limits himself to challenging the trial justice's discussion of the duty to retreat. *See State v. Mendez*, 116 A.3d 228, 242 n.19 (R.I. 2015).

8

this step of the analysis by noting that he had given an additional instruction as to the state's burden to prove beyond a reasonable doubt that defendant did not act in self-defense.

Proceeding to the second step in the analytical process, the trial justice independently evaluated the evidence and weighed the credibility of the witnesses. He explained that the video "was a little grainy, and it was sometimes from a distance, but it depicted the entire confrontation at the Providence Train Station that occurred on the date this offense happened." The trial justice explained:

> "Mr. Guerrero stated * * * 'I tried to get away, but he cornered me.'
> That's my note that I wrote in my trial notebook. The Court did not
> see that on the video. I didn't see any cornering.
>
> "Mr. Guerrero testified, I didn't feel good. All he kept saying is,
> I'm going to kill you, and I felt horrible.
>
> "Now, the Court has considered that, and that differs from Mr. Diop,
> who was the victim, his version of the events."

Thereafter, the trial justice expressed his disbelief in defendant's testimony regarding the threats which he alleged Mr. Diop had made, which conclusion, the trial justice stated, was reinforced by the fact that neither Mr. Toribio nor Mr. Lizardo had testified that they heard those statements or threats.

The trial justice also stated that, although Mr. Diop was the initial aggressor, defendant had a duty to retreat before acting in self-defense. In *State v. Garrett*, 91 A.3d 793 (R.I. 2014), this Court noted our well-established doctrine that, before an individual who perceives himself threatened by another may resort to using deadly force, he or she "must attempt to retreat if [he or she is] consciously aware of an open, safe and available avenue of escape." *Garrett*, 91 A.3d at 801 (internal quotation marks omitted). In *Garrett*, this Court upheld the denial of a motion for a new trial because there existed a duty to retreat even when the defendant's avenue of escape would

9

have required her to walk over debris and proceed up a set of stairs—even though that avenue of escape involved turning her back to the aggressor. *Id.* at 804-05.

In the course of his ruling on defendant's motion for a new trial, the trial justice determined that defendant did not satisfy that duty to retreat before responding with deadly force (his knife). In our judgment, defendant's challenge to the trial justice's determination with respect to defendant's duty to retreat is unavailing. In reaching his conclusion, the trial justice considered the avenues of retreat available to defendant and noted: "at a minimum, there was an opportunity to back up a few more steps, put some space between Diop and [defendant], and see if Diop advanced further." The trial justice additionally stated:

> "[I]ndependently, looking at this evidence, the Court feels that, one, the amount of force and the immediate nature of that force was excessive, that there was an opportunity to retreat, and, at the very minimum, there was an opportunity that retreat would have included backing up a few more steps and would allow any observer to see if Mr. Diop was going to continue his aggressions towards Mr. Guerrero."

Additionally, because defendant was familiar with the Amtrak station, having worked as a taxi driver there for some years, the jury was (and the trial justice was) entitled to draw the inference that he was aware of the available avenues of escape in that area. *See State v. Hallenbeck*, 878 A.2d 992, 1012 (R.I. 2005) (noting that the jury was entitled to draw an inference as to the defendant's awareness of an avenue of escape).

On certiorari, defendant also emphasizes the short time span within which the scuffle occurred. Notably however, the trial justice expressly recognized "the speed with which this event was unfolding," and noted that it "is not something that the Court takes lightly." It is clear to us that the trial justice addressed all of the relevant evidentiary issues, and we perceive no reversible error in his ruling with respect to conducting the second step in the analytical process.

10

Upon concluding the above analyses, the trial justice reached the third step in the analytical process and stated that he would have reached the same result as the jury did. *See Silva*, 84 A.3d at 416. We note that the trial justice's conclusion that he would have reached the same result as the jury "is a significant consideration in this Court's review of a denial of a motion for [a] new trial * * *." *Id.* at 418. Because the trial justice would have reached the same conclusion as the jury, he properly concluded his analysis at that point and denied defendant's motion for a new trial. *See Prout*, 996 A.2d at 645; *Imbruglia*, 913 A.2d at 1028.

Accordingly, after a thorough review of the record in this case, it is our judgment that the defendant has failed to demonstrate that the trial justice clearly erred or overlooked or misconceived relevant or material evidence in denying the defendant's motion for a new trial. *See State v. Yon*, 161 A.3d 1118, 1130 (R.I. 2017). We are satisfied that the trial justice more than adequately performed his role under each step of the analysis of the defendant's motion for a new trial. We therefore affirm the Superior Court's denial of the defendant's motion for a new trial.

## IV

## Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. We remand the record to the Superior Court with our decision endorsed thereon.

11

**SUPREME COURT – CLERK'S OFFICE**

**OPINION COVER SHEET**

| | |
|---|---|
| **Title of Case** | State v. Francisco Guerrero. |
| **Case Number** | No. 2017-164-M.P.<br>(P2/13-2025A) |
| **Date Opinion Filed** | April 23, 2019 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia JJ. |
| **Written By** | Associate Justice William P. Robinson III |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice William E. Carnes, Jr. |
| **Attorney(s) on Appeal** | For State:<br><br>Lauren S. Zurier<br>Department of Attorney General |
| | For Defendant:<br><br>George J. West, Esq. |