STATE

v.

Leneth FISHER.

No. 2000–485–Appeal.

Supreme Court of Rhode Island.

March 23, 2004.

Christopher R. Bush, Esq., Providence, for Plaintiff.

Kelly Monteiro, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., and FLANDERS, GOLDBERG, FLAHERTY, and SUTTELL, JJ.

## OPINION

GOLDBERG, Justice.

This case came before the Supreme Court for oral argument on January 29, 2004, pursuant to a petition for writ of certiorari[1] filed by the defendant, Leneth Fisher (Fisher or defendant), challenging a judgment of conviction for assault with a dangerous weapon and possession of a weapon after previously having been convicted of a violent crime.[2] The defendant argues that the trial justice erred in limiting the scope of cross-examination and instructing the jury on constructive possession. Discerning no error, we affirm the judgment of conviction.

### Facts and Travel

In the early morning of May 16, 1999, Officer Jose Deschamps (Officer Deschamps), was posted at the corner of Chapel and Mathewson Streets in downtown Providence, directing vehicular and pedestrian traffic caused by the closing of local nightclubs. At approximately 2:45 a.m., he observed a fellow patrolman, Officer Greg Daniels (Officer Daniels), escorting defendant away from the crowd that had formed on Mathewson and Weybosset Streets. Although defendant was yelling

---

1. The defendant's private counsel failed to file a timely notice of appeal from his convictions. After defendant's case was referred to the Office of the Public Defender, the Appellate Division filed a petition for writ of certiorari seeking review of his convictions. This Court granted the petition, docketed defendant's case, and ordered full-briefings.

2. This case arose from a combination trial and probation violation hearing. In addition to the judgment under review, defendant was adjudicated a probation violator by the trial justice in P2/97–3393A, P2/95–1504A, P2/94–2932A and P2/94–3868A, and was ordered to serve concurrent sentences, the longest of which was 114 months.

obscenities at Officer Daniels, Officer Deschamps instructed Officer Daniels to release defendant and concentrate on crowd control.

A short time later, Officer Deschamps observed defendant in the area of a parking lot adjacent to the Grace Church, approximately forty feet away. The defendant fired a handgun at Officer Deschamps. The bullet passed over the officer's head and hit a building behind him.

In response, Officer Deschamps drew his weapon, activated his radio to alert his fellow officers that shots had been fired, and began pursuit. Officer Deschamps chased defendant into the parking lot adjacent to the Grace Church and observed defendant hand the firearm to a man seated in the back of a parked vehicle. The man, later identified as Derek King (King), placed the handgun underneath the back seat on the passenger side of the vehicle. Officer Deschamps instructed defendant to put his hands up and get on the ground. When defendant failed to comply, Officer Deschamps testified he "assisted" him to the ground and held him while simultaneously keeping an eye on King.

Shortly thereafter, additional officers arrived and removed King and two female passengers from the vehicle. Officer Deschamps seized the handgun from underneath the rear passenger seat and turned it over to Detective Joseph Donnelly (Det. Donnelly) of the Bureau of Criminal Identification (BCI). While searching the rear of Grace Church, Officer Deschamps found a spent shell casing that was given to Det. Donnelly.

Detective Donnelly also seized defendant's checkered shirt for identification purposes. Although Det. Donnelly visually inspected the shirt, he testified that he did not test defendant's shirt for gunpowder residue, despite the fact that a cutting-edge test for gunpowder residue was available.

The handgun and shell casing were tested for fingerprints and identifying marks. One of King's fingerprints, but none from defendant, was lifted from the firearm. Detective Donnelly also sent the handgun and shell casing to the Rhode Island Crime Laboratory to be examined by Robert Hathaway (Hathaway), an expert in firearm and tool-mark examination. Although Hathaway could not confirm that the casing had been fired from the handgun, he did conclusively determine that the casing had, at some point, been chambered in the firearm. Hathaway explained that there were only two ways in which the shell casing could have been ejected from the handgun: the casing could have been automatically discharged when the weapon was fired, or it could have been manually ejected.

At the close of the state's case, defendant called his only witness, Stephanie Dubois (Dubois). Dubois was a passenger in the vehicle from which the firearm was seized. She testified that a gun was fired that evening by an unidentified man whose advances she had rejected. According to Dubois, Fisher was innocently standing in the parking lot when the shots were fired by the unidentified man. Dubois also testified that although King stuffed a handgun under the passenger seat of the vehicle, it was "a gun, not *the* gun." (Emphasis added.)

The jury found defendant guilty on both counts; he subsequently was sentenced to twenty years at the Adult Correctional Institutions, five years to serve and the remaining fifteen years suspended for assault with a dangerous weapon, and a concurrent five-year term for the firearm possession offense.

## Discussion

### I. Limitation of Cross–Examination

 The defendant argues that the trial justice committed reversible error when he limited defense counsel's cross-examination of "a critical state witness about two important issues." The Sixth and Fourteenth Amendments to the United States Constitution[3] and article 1, section 10, of the Rhode Island Constitution[4] grant individuals accused of a crime the right to confront witnesses who testify against them. "[I]ncluded in the right to confront witnesses is the fundamental right of the criminal defendant to cross-examine his or her accusers." *State v. Hazard*, 745 A.2d 748, 755–56 (R.I.2000) (quoting *State v. Wiley*, 676 A.2d 321, 324 (R.I.1996)). "For cross-examination to satisfy constitutional guarantees, the trial justice is required to afford the accused 'reasonable latitude' to establish or reveal bias, prejudice, or ulterior motives as they may relate to the case being tried." *Id.* at 756 (citing *State v. Brown*, 709 A.2d 465, 473 (R.I.1998)). This Court has recognized, however, that once sufficient cross-examination has been accomplished, the constitutional safeguards are satisfied, and further cross-examination is left solely within the discretion of the trial justice. *Id.* (citing *Wiley*, 676 A.2d at 324). A "trial justice's discretionary decision to limit the scope of cross-examination will not be disturbed absent a clear abuse of discretion." *State v. Bustamante*, 756 A.2d 758, 765 (R.I.2000) (citing *Hazard*, 745 A.2d at 756).

The defendant first contends that the trial justice erred in precluding defense counsel from eliciting testimony from Officer Deschamps that defendant's shirt was never tested for gunpowder residue, and that Officer Deschamps failed to request testing after suggesting he would do so while previously testifying in federal court.[5] The defendant asserts that this testimony was probative of whether defendant actually fired the gun because it would have revealed a "sloppy police investigation" and "an ulterior motive to avoid uncovering evidence that would undercut [Officer Deschamps's] claim that [defendant] fired the gun." We reject this argument.

Without addressing defendant's assertions of relevancy, it is clear that this line of questioning was wholly misdirected at Officer Deschamps. As a patrolman, it was not Officer Deschamps's responsibility to conduct forensic analysis of evidence, and he repeatedly testified that he did not know whether the shirt had been tested for gunpowder residue. Given Officer Deschamps's lack of personal knowledge and the fact that evidence handling was not part of his duties, the trial justice was within his discretion to limit the scope of cross-examination on this issue.

 Notwithstanding, defense counsel was afforded ample opportunity to cross-examine Det. Donnelly, the officer specifically responsible for overseeing the forensic analysis of evidence gathered at the crime scene. Detective Donnelly testified that although he was aware that the Connecticut State Police lab was capable of

---

**3.** The Sixth Amendment to the United States Constitution guarantees that "the accused shall enjoy the right * * * to be confronted with the witnesses against him [or her]."

**4.** Article 1, section 10, of the Rhode Island Constitution provides that "[i]n all criminal prosecutions, accused persons shall enjoy the

right * * * to be confronted with the witnesses against them."

**5.** The defendant was tried and acquitted of possessing a firearm after having been convicted of a crime, which is a violation of 18 U.S.C. § 922(g)(1).

performing a reliable gunpowder residue test, he never attempted to submit the shirt for testing. Consequently, defendant successfully elicited the very testimony that he contends would have cast doubt upon the soundness of the state's case. The defendant's assertion that he was prejudiced by his inability to elicit further testimony on this issue is without merit.

The defendant also contends that the trial justice committed reversible error in not permitting Officer Deschamps to demonstrate, upon defense counsel, how he physically "assisted" defendant to the ground. Fisher argues that this demonstration was relevant because it possibly could have impeached Officer Deschamps, the only eyewitness to the crime. Although a review of the record indicates that this issue was not properly preserved, we are nonetheless unpersuaded by defendant's argument.

We note that in the context of this case, the manner in which defendant was arrested is completely irrelevant to the issues presented to the jury; that is, whether Fisher was in possession of a handgun and whether he fired it at a Providence police officer. Even though the manner of defendant's arrest may have some bearing on Officer Deschamps's credibility, the introduction of demonstrative evidence was completely within the trial justice's discretion. The record clearly establishes that defense counsel conducted extensive cross-examination of Officer Deschamps on this issue despite the trial justice's refusal to permit counsel to participate in an in-court demonstration. The defendant was also given ample opportunity to impeach Officer Deschamps on a variety of other issues. As such, defendant's claim of prejudice is unfounded.

## II. Jury Instruction

Next, defendant asserts that the trial justice should not have instructed the jury on constructive possession of the firearm. The defendant contends there was no evidence to support a finding of constructive possession. It is well settled that "[w]hen instructing the jury, the trial justice 'should reasonably set forth all of the salient and essential propositions of law that relate to material issues of fact which the evidence tends to support.'" *State v. LaRoche*, 683 A.2d 989, 996–97 (R.I.1996) (quoting *State v. Conway*, 463 A.2d 1319, 1322 (R.I.1983)). "[T]he jury's attention should not be directed to various propositions of law unless the record contains evidence which supports and requires it." *Id.* at 997 (quoting *Conway*, 463 A.2d at 1322).

"Constructive possession of an object occurs when an individual exercises dominion and control over such object even though it is not within his [or her] immediate physical possession." *State v. Mastracchio*, 672 A.2d 438, 448 (R.I.1996) (quoting *State v. Jenison*, 442 A.2d 866, 875 (R.I.1982)). A defendant is considered to be in constructive possession of an item when he or she has: (1) knowledge of the presence of the item and (2) intent to exercise control over it. *In re Vannarith D.*, 731 A.2d 685, 689 (R.I.1999) (citing *State v. Hernandez*, 641 A.2d 62, 70 (R.I. 1994)).

At trial, Officer Deschamps testified that after the defendant fired at him, he passed the handgun to King, who placed it under his seat. This testimony clearly provides evidence from which a jury could conclude that the defendant had knowledge of the firearm and intent to control the firearm both before and after he transferred it to King. A jury instruction on constructive possession may have been unnecessary because, for the jury to convict the defendant of assault with a dangerous weapon, the jurors were required to find, beyond a

reasonable doubt, that the defendant not only possessed the handgun, but also actually used it before he gave it to King. Accordingly, although an instruction on constructive possession may have been superfluous, the error, if any, is harmless. By its finding that the defendant assaulted Officer Deschamps with a dangerous weapon, the jury necessarily concluded that he was in possession of the firearm.

## Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court. The record shall be remanded to the Superior Court.