**Supreme Court**

No. 2007-145-C.A.
(P1/04-145BG)

State                              :

v.                               :

Kendall Whitaker.              :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Tel. 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State                              :

v.                               :

Kendall Whitaker.                   :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Flaherty, for the Court.**  On the evening of December 4, 2002, a group of friends gathered to celebrate the birthday of Tammy Kennedy at her apartment.  However, the intended festivities soon took a tragic turn, and, before the night was over, three people at the party suffered gunshot wounds and one of them, nineteen-year-old Joel Jackson, was dead.  The defendant, Kendall Whitaker, eventually was charged, tried, and convicted on multiple counts, including murder, robbery, assault with a dangerous weapon, carrying a pistol without a license, using a firearm in the commission of a crime of violence, and committing a crime of violence while armed with a firearm.  The defendant timely appealed to this Court.  In his appeal, the defendant argues that his trial was infected by a host of errors that require that his convictions be vacated.  We have examined the record, the briefs submitted by the defendant and the state, and have listened to the arguments advanced by the parties.  For the reasons set forth in this opinion, we affirm the judgment of conviction.

# I

## Facts and Travel

On the night of December 4, 2002, a group gathered to celebrate a birthday in the apartment of Tammy Kennedy in Providence. George Toby, who was Kennedy's friend and was Kennedy's older son's football coach, was present, as were Kennedy's sister Maryann Godfrey, who had previously dated defendant, and Kennedy's neighbor Candida Morillo.

To enhance the festivities, Godfrey, Morillo, and Toby, along with the older of Kennedy's sons, drove to a supermarket to purchase a birthday cake. When they returned to the apartment, they spoke to Joel Jackson and Corissa Richardson, who were sitting in a car in the parking lot of Kennedy's apartment building. Toby invited Jackson and Richardson to join them in Kennedy's apartment.

A short time later, defendant, accompanied by Brandon Robinson and Richard Isom, arrived at Kennedy's apartment. Robinson and Isom had known each other for many years, and they had become acquainted with defendant late in 2002. The trio had congregated earlier in the evening at Robinson's home. They then decided to go to Kennedy's apartment to see some of the women whom they expected to be there.[1]

After Whitaker, Robinson, and Isom arrived at Kennedy's apartment, Toby engaged them in conversation about mutual acquaintances and the respective areas of Providence where they resided. For some reason, defendant, Robinson, Isom, and Toby withdrew to the hallway outside the apartment. While he was in the hallway, Toby was asked whether he was there to see one of the women present at the party; he replied that he was there to see Kennedy, who was sleeping in a back bedroom at that time. Toby then returned to the apartment alone, leaving Whitaker,

---

[1] Robinson and Isom would later agree to testify against Whitaker in exchange for charging and sentencing considerations.

Robinson, and Isom in the hallway. At trial, Robinson and Isom testified that defendant said that he wanted to steal a gold chain that Jackson was wearing.

Robinson and Whitaker then re-entered the apartment, and, according to multiple witnesses, a scuffle soon ensued. Toby, who had emerged from Kennedy's back bedroom, testified that he saw Robinson and Jackson struggling. Toby testified that he entered the fray himself and attempted to separate the men. As he did, he noticed a gun, and he grabbed Robinson's hand in an effort to control the weapon. Suddenly, the sounds of gunfire resounded throughout the apartment.

Robinson testified that his weapon never discharged and that his gun never left his hand. Toby, who had a hand on Robinson's gun from the time that he engaged Robinson, also said that the weapon never left Robinson's hand and that it was never positioned behind Robinson's back.[2] Toby also testified that when he heard the gunshots, he did not feel any motion from Robinson's gun.

Corissa Richardson[3] testified that she saw defendant remove a handgun from his coat pocket during the struggle for Robinson's gun and that she watched him point it in the direction of the scuffle. Robinson also testified that Whitaker drew his gun after he came back into the apartment, but no other witness testified that Whitaker was armed during the brawl.[4]

Robinson further testified at trial that as Jackson collapsed onto him after being shot, he relieved Jackson of the gold chain and medallion that Jackson had been wearing. He put the chain in his pocket and carried the medallion in his hand. Isom testified that he later removed the chain from the pocket of Robinson's jacket. Robinson said that he held the medallion until

---

[2] The evidence disclosed that Robinson was shot in his back.
[3] Richardson was thirteen years old at the time of this incident but was sixteen at the time of the trial.
[4] Isom testified that Whitaker had brought a weapon to the apartment.

he arrived home, but he left it on the trunk of his car while defendant drove him to the hospital. Providence Police later confiscated the medallion from Robinson's sister.

As soon as he regrouped with Isom, Robinson reported that he had been shot by Whitaker, and he asked Isom to bring him to the hospital. However, Isom declined to do so because he had criminal charges pending against him. Instead, he drove Robinson to Robinson's home. After arriving at his house, Robinson and defendant squabbled about the shooting; Whitaker said that it had been an accident. The defendant then drove the wounded Robinson to Rhode Island Hospital, where defendant was subsequently apprehended by law enforcement.

Whitaker eventually was charged with (1) murdering Jackson, (2) robbing Jackson, (3) conspiring to rob Jackson, (4) assaulting Toby with a dangerous weapon, (5) assaulting Robinson with a dangerous weapon, (6) carrying a handgun without a license, (7) using a firearm in the commission of a crime of violence, (8) discharging a firearm in the commission of a crime of violence, and (9) committing a crime of violence while armed and having available a firearm. After trial before a jury, Whitaker was acquitted on the conspiracy count and the charge of assaulting Toby, but he was convicted on the remaining counts.

Before this Court, defendant argues that the trial justice erred when she denied his motion for a new trial, gave confusing or unwarranted instructions in the jury, denied his motion for a judgment of acquittal, improperly told the jury that defendant was in custody, permitted the excessive use of leading questions during the direct examination of the state's witnesses, and failed to record bench conferences. We will provide additional facts in our discussion where necessary.

## II

## Motion for New Trial

Whitaker first argues on appeal that the trial justice erred when she denied his motion for new trial because the trial justice commented with disdain about the lack of credibility of the witnesses, at one point describing them as "competing liars." Therefore, he contends that she erred when she said she agreed with the jury's verdict. The defendant further argues that he should have been granted a new trial because there was insufficient evidence on aiding and abetting to warrant a guilty verdict for that crime. Finally, defendant maintains that he should be entitled to a new trial because the guilty verdict for aiding and abetting Robinson in stealing Jackson's chain is legally inconsistent with the guilty verdict for assaulting Robinson.

## A

## Standard of Review

When a motion for new trial is founded on the weight of the evidence, "a trial justice sits as a thirteenth juror and exercises his or her own independent judgment, assessing the credibility of the witnesses and other evidence, and must 'choose which conflicting testimony and evidence to accept and which to reject.'" State v. Abdullah, 967 A.2d 469, 479 (R.I. 2009) (quoting State v. Banach, 648 A.2d 1363, 1367 (R.I. 1994)). When he or she entertains the motion, the trial justice should "(1) consider the evidence in light of the jury charge, (2) independently assess the credibility of the witnesses and the weight of the evidence, and then (3) determine whether he or she would have reached a result different from that reached by the jury." State v. St. Michel, 37 A.3d 95, 102 (R.I. 2012) (quoting State v. Cerda, 957 A.2d 382, 385 (R.I. 2008)). If the trial justice determines that he or she agrees with the jury's verdict or that reasonable minds could differ as to the result, then the motion should be denied. Id. "If, however, the trial justice finds

that the state has failed to prove the defendant's guilt beyond a reasonable doubt, a new trial must be ordered." Id. (quoting Cerda, 957 A.2d at 385).

There is, however, a "distinction between a criminal defendant's motion for a new trial that attacks the sufficiency of the evidence supporting the guilty verdict and a new-trial motion that contends that the verdict is against the weight of the evidence." State v. Karngar, 29 A.3d 1232, 1235 (R.I. 2011) (quoting State v. Clark, 974 A.2d 558, 569 (R.I. 2009)). When confronted with a motion for new trial based on insufficient evidence, "a trial justice must examine the evidence in the light most favorable to the prosecution, without assessing the weight of the evidence or the credibility of witnesses." Id. (citing Clark, 974 A.2d at 570). "If the trial justice determines that any rational trier of fact could have found that the prosecution established the elements of the crime beyond a reasonable doubt, then the motion must be denied * * * ." Id. (citing Clark, 974 A.2d at 569, 571).

"This Court accords great deference to a trial justice's ruling on a motion for a new trial 'if he or she has set forth sufficient reasoning in support of the ruling.'" Abdullah, 967 A.2d at 479 (quoting State v. Imbruglia, 913 A.2d 1022, 1028 (R.I. 2007)). We "will not overturn a trial justice's ruling on a motion for a new trial unless he was 'clearly wrong' or 'overlooked or misconceived material and relevant evidence that related to a critical issue in the case.'" St. Michel, 37 A.3d at 102 (quoting Cerda, 957 A.2d at 386).

## Discussion

**1**

## Weight of the Evidence

The defendant argues that the trial justice found the testimony of the witnesses who were present at the crime scene to be incredible, commenting that she did not think that any of the civilian witnesses told the truth. He maintains that, in light of her comments, she could not have determined that the state was able to satisfy its burden of proof and, when she exercised her independent judgment, she should have granted the motion for new trial. We disagree.

In Cerda, 957 A.2d at 386, we affirmed the denial of a motion for new trial based on the weight of the evidence in a case in which the trial justice noted that key witnesses initially had lied about what had occurred. Despite that fact, this Court was satisfied that the trial justice properly discharged his duty in ruling on a motion for new trial; that is, he "appropriately assessed the witnesses' credibility and determined that the evidence could cause reasonable minds to differ as to the outcome of the case." Id. (citing State v. Schloesser, 940 A.2d 637, 639 (R.I. 2007)).

We similarly affirmed the denial of a motion for new trial in State v. Rosario, 35 A.3d 938, 948-49 (R.I. 2012). There, the trial justice relied on Cerda in explaining that, although inconsistencies existed in the testimony of two witnesses, he nonetheless found that the testimony was believable. Id. The trial justice concluded that despite inconsistencies in the testimony of prosecution witnesses, "the thrust or the nub" of their testimony was believable and, conversely, the defendant's testimony was not believable. Id. at 948. We held that "not only did [the trial justice] conclude that reasonable minds could differ as to what the verdict should be,

but he also expressly stated that he 'would have concurred in the unanimous verdict.'" Id. at 949.

Here, there can be no disputing that the record reveals a substantial number of inconsistencies in the testimony of the various witnesses. For example, Isom was confronted with the fact that his testimony in front of the grand jury and his trial testimony were inconsistent regarding the size of defendant's gun, whether there were two guns under defendant's bed when the trio was at defendant's home prior to the night in question, and the caliber of defendant's gun. In his grand jury testimony, Isom also denied having heard defendant mention stealing Jackson's chain. Cross-examination at trial also confirmed that Isom omitted some details from his grand jury testimony but included them in his testimony at defendant's bail hearing, such as whether he had seen defendant's gun and Robinson's gun at the same time.

Robinson similarly was confronted with inconsistencies, such as when he first said that defendant's gun was .22 caliber.[5] Also, Robinson swore that he had noticed that the bullets to defendant's pistol were stamped with the notation that they were .22 caliber, although an expert witness testified that a .22-caliber bullet would not carry such a marking.

In her bench decision denying the motion for new trial, the trial justice specifically said that, sitting as the thirteenth juror, she was certain that there were two guns in the apartment that fatal night. She also found that, before defendant arrived with his friends, no one at the apartment was armed. With respect to who was armed among Whitaker, Robinson, and Isom, the trial justice found that the evidence did not support the conclusion that Isom had the second gun. Even though she commented that Robinson and Isom lacked credibility on many points, the trial justice noted that they both testified that defendant's gun appeared to be .22 caliber. The

---

[5] On redirect examination, he verified that he had mentioned that fact in his initial statement to police in December of 2002.

trial justice further relied on Richardson's testimony that she saw defendant with a gun, concluding that although that witness's credibility was marginal, the circumstantial evidence undergirded and provided support to her testimony. Significantly, the trial justice "accepted as true the accounts of Brandon Robinson's * * * exclamations that Whitaker shot him," and she "believe[d] that Robinson shouted[,] 'Stop shooting.'" Ultimately, the trial justice found that she would have reached the same result as the jury and that reasonable minds could have differed as to the outcome.

The trial justice clearly recognized the inherent difficulties that arose because the witnesses' testimony was rife with so many inconsistencies, commenting during the hearing on the motion for new trial that she did not "think there was anybody who told the truth in th[e] trial" and that the circumstantial evidence was needed to "sift through and see which of these competing liars [wa]s telling the truth." The trial justice went on, however, to explain what testimony she accepted and where she found that the testimony was supported by circumstantial evidence. See Rosario, 35 A.3d at 948-49; Cerda, 957 A.2d at 385-86. As was the case in Rosario, 35 A.3d at 948-49, where inconsistencies did not preclude a trial justice from accepting some of a witness's testimony and denying a new-trial motion based on the weight of the evidence, here the trial justice determined which testimony was credible, and she ultimately concluded that she would have reached the same result as the jury.

We accord great deference when we review the decision of a trial justice on a motion for new trial "because a trial justice, being present during all phases of the trial, is in an especially good position to evaluate the facts and to judge the credibility of the witnesses." Rosario, 35 A.3d at 948 (quoting State v. Guerra, 12 A.3d 759, 766 (R.I. 2011)); see also State v. Paola, 59 A.3d 99, 106 (R.I. 2013) (explaining that our review is limited to a cold record, so we defer "to

the factual determinations and credibility assessments made by the judicial officer who has actually observed the human drama that is part and parcel of every trial" (quoting State v. DiCarlo, 987 A.2d 867, 872 (R.I. 2010))). The trial justice's perhaps poorly chosen comments regarding the witnesses' general credibility notwithstanding, we are of the opinion that she found credible the testimony that there were two firearms in the apartment, that no one was armed except Robinson and Whitaker, that Robinson yelled, "Stop shooting," and he did say that Whitaker shot him, and that the evidence showed that defendant's weapon was .22 caliber.

In a case such as this that involves conflicting evidence and inconsistent testimony, we cannot say, from our review of a cold record, that the trial justice was clearly wrong when she denied the motion for new trial or that she overlooked or misconceived material evidence relating to a critical trial issue.

**2**

**Sufficiency of the Evidence**

The defendant contends that there was insufficient evidence for the jury to convict him under an aiding-and-abetting theory because the jury found that there was no conspiracy, and the only evidence that supported aiding and abetting was the same evidence that supported the conspiracy count, on which defendant was acquitted. However, our review of the record reveals that this issue was not raised before the trial justice and that therefore this argument must fail in accordance with our well-settled waiver rule. See State v. Price, 66 A.3d 406, 416 (R.I. 2013); State v. Moten, 64 A.3d 1232, 1238-39 (R.I. 2013); State v. Figuereo, 31 A.3d 1283, 1289 (R.I. 2011).

As we said in Karngar, 29 A.3d at 1235, there is a difference between a motion for new trial that is based on the weight of the evidence and one that is based on the sufficiency of the

evidence. However, irrespective of the grounds that a defendant employs to support his motion for new trial, for us to review the propriety of the denial of such a motion, those grounds must have been preserved in the Superior Court. See id. at 1235-36 (citing State v. Storey, 8 A.3d 454, 460 n.7 (R.I. 2010)). In Karngar, a defendant's request for a new trial based only on the weight of the evidence did not preserve for appellate review the ground that a new trial was warranted based on insufficient evidence. Id.

The defendant's written motion for new trial merely set forth that he moved, pursuant to Rule 33 of the Superior Court Rules of Criminal Procedure, that the trial justice order a new trial; it provided no grounds. At the March 17, 2006 hearing on the motion, defendant asked the trial justice to function as the thirteenth juror and assess the evidence and credibility of witnesses. At no point before the Superior Court did defendant cite the sufficiency of the evidence as a basis for a new trial. We thus reach the same conclusion that we reached in Karngar and hold that the denial of a motion for new trial based on insufficient evidence is not properly before us. See Karngar, 29 A.3d at 1235-36 (citing Storey, 8 A.3d at 460 n.7).

**3**

**Legal Inconsistency**

Whitaker also maintains that he is entitled to a new trial because the jury's guilty verdict for aiding and abetting Robinson in the robbery is legally inconsistent with its guilty verdict for assaulting Robinson.

Because a jury has broad power to compromise, "this Court will uphold logically inconsistent jury verdicts provided that the verdicts are legally consistent." State v. Arroyo, 844 A.2d 163, 170 (R.I. 2004) (citing State v. Romano, 456 A.2d 746, 764 (R.I. 1983)). We have explained that legal inconsistency exists where "the essential elements of the count[s] of which

the defendant is acquitted are identical and necessary to prove the count of which the defendant is convicted." Id. at 171 (quoting State v. Allessio, 762 A.2d 1190, 1192 (R.I. 2000)).

However, to pursue his argument before this Court that he is entitled to a new trial because the jury's verdicts on two particular counts are legally inconsistent, defendant also must have raised the issue in the Superior Court. See State v. Bido, 941 A.2d 822, 828-29 (R.I. 2008) ("It is well settled that a litigant cannot raise an objection or advance a new theory on appeal if it was not raised before the trial court."). The defendant did not cite legal inconsistency as a basis for granting a new trial in his motion for new trial, nor did he argue it when the motion was heard. We are, therefore, of the opinion that the issue is not properly before us and that there is nothing for this Court to review.

### III

### Jury Instructions

The defendant contends that the instructions provided by the trial justice to the jury were deficient in multiple ways: first, that there was insufficient evidence to warrant an instruction on aiding and abetting; second, that the trial justice failed to instruct the jury on intent; and third, that the instructions were confusing to the jury.

### A

### Standard of Review

We review jury instructions de novo. Imbruglia, 913 A.2d at 1031. "[W]hen instructing the jury, the trial justice 'should reasonably set forth all of the salient and essential propositions of law that relate to material issues of fact which the evidence tends to support.'" State v. Fisher, 844 A.2d 112, 116 (R.I. 2004) (quoting State v. LaRoche, 683 A.2d 989, 996-97 (R.I. 1996)). To justify directing the jury's attention to a proposition of law, the record must contain evidence

that supports it.  Id. (citing LaRoche, 683 A.2d at 997); see also State v. Garcia, 883 A.2d 1131, 1137 (R.I. 2005) ("It is incumbent upon a trial justice to instruct the jury on the law that applies to each issue that the parties raise at trial." (citing State v. McGuy, 841 A.2d 1109, 1112 (R.I. 2003))).

This Court assesses jury instructions "to determine how a 'jury of ordinary intelligent lay people would have understood them.'"  Imbruglia, 913 A.2d at 1031 (quoting State v. John, 881 A.2d 920, 929 (R.I. 2005)).  Rather than "isolat[ing] a challenged portion from the instructions as a whole," "[w]e scrutinize the jury instructions in their entirety in order to ascertain whether or not a particular instruction misled or confused the jury."  Id. (citing John, 881 A.2d at 929; State v. Ibrahim, 862 A.2d 787, 796 (R.I. 2004)).

According to Rule 30 of the Superior Court Rules of Criminal Procedure, "[n]o party may assign as error any portion of the charge or omission therefrom unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which the party objects and the grounds of the party's objection."  This constraint allows the trial justice "to cure the alleged deficiencies before the jury retires for deliberations."  State v. Palmer, 962 A.2d 758, 766 (R.I. 2009) (quoting State v. Crow, 871 A.2d 930, 935 (R.I. 2005)).  We therefore apply the raise-or-waive rule to objections to the jury charge that are raised for the first time on appeal.  Id.

## B

## Discussion

## 1

## Aiding-and-Abetting Instruction

In State v. Long, 61 A.3d 439, 447 (R.I. 2013), we had the opportunity to consider what evidence justified an instruction on aiding and abetting. In that case, one participant in a marijuana-growing operation agreed to testify against another, and that testimony established that the defendant was present at the initial meeting where the operation was planned and that she suggested that a proper water supply be ensured. Id. This Court held that the "testimony that defendant was at [the site of the growing operation] on a number of occasions was sufficient to support the jury charge with respect to aiding and abetting." Id.

Here, Whitaker maintains that there was insufficient evidence in the record to support an aiding-and-abetting instruction because there is no evidence in the record to establish an action consistent with his supposed criminal intent. The defendant overlooks, however, that the testimony of Isom and Robinson includes their statements that he arrived at the apartment armed, that before re-entering the apartment he expressed an interest in taking Jackson's chain, that he and Robinson then re-entered the apartment, and that Robinson actually took Jackson's chain. Further, Richardson testified that during the struggle over Robinson's gun, she observed defendant draw a gun and aim it towards the scrum.

We are of the firm opinion that, based on the evidence presented during the trial, it was not improper for the trial justice to instruct the jury on aiding and abetting. See Long, 61 A.3d at 447-48; Fisher, 844 A.2d at 116-17.

**2**

**Instruction on the Jury's Role**

In her charge to the jury, the trial justice informed the panel that its "function [wa]s to determine from the evidence what's the truth about the events in question, what happened, what the people involved did or did not do and what were the surrounding circumstances." The defendant objected to that portion of the charge, arguing that it improperly relieved the state of its burden to prove the elements of the offenses beyond a reasonable doubt because the jury might believe that it was first to decide what happened and only then consider the state's burden.

We considered a similar argument in State v. Perry, 770 A.2d 882, 886 (R.I. 2001), where a defendant argued that an instruction that the jury should acquit if it found that there was "'a real possibility' that he was not guilty." This Court said that "[d]efining for a jury when doubt is reasonable, while an inexact science, does not shift the burden of proof to the defendant when no part of the definition contradicts the court's plain instruction that the burden is entirely the [s]tate's." Id. at 886 (quoting State v. Castle, 935 P.2d 656, 661 (Wash. App. 1997)). We also explained that although an instruction may "'engender some confusion as to the burden of proof if it stood by itself,' * * * the overall charge is 'sufficient to dispel any possible confusion or misunderstanding arising from the reasonable doubt definition'" if it accurately describes the burden of proof. Id. (quoting State v. Saluter, 715 A.2d 1250, 1257 (R.I. 1998)).

We are convinced that the jury charge in this case sufficiently and accurately described the state's burden of proof. Although the trial justice, early in the charge, informed the jury that its task was to determine what happened rather than to determine whether the state proved the elements of the offenses beyond a reasonable doubt, the instructions, viewed in their entirety, did

not shift the burden of proof to defendant. See Perry, 770 A.2d at 886. For example, the trial justice explained that

> "[i]n all criminal cases, the [s]tate or the prosecution has the burden of producing evidence sufficient to prove the defendant's guilt. The [s]tate must produce evidence to support each and every one of the elements or components of the crimes charged. The [s]tate also carries the burden of producing enough evidence so that in the minds of the jurors, the defendant's guilt has been proved beyond a reasonable doubt as to each element or component of the crimes charged."

The trial justice then instructed the jury on the individual offenses with which Whitaker was charged, including the elements for each and informing the jury that if the state failed to prove any of the elements beyond a reasonable doubt, then the jury should acquit defendant.

Viewing the jury charge in its entirety, we conclude that the instructions were not likely to mislead the jury about the burden the state had to prove each of the offenses beyond a reasonable doubt.

### 3

### Remaining Instructions

Whitaker also argues that the trial justice erred because she failed to include a separate instruction on intent. He maintains that the jury must not have understood the instructions because it illogically convicted defendant of assaulting the very person whom he was convicted of aiding and abetting. Whitaker similarly argues that the jury was confused by the instructions, confusion that he argues is evidenced by verdicts of guilty of aiding and abetting but of not guilty of conspiracy.

Neither this argument nor the objection, however, was brought to the attention of the trial justice at the appropriate time.[6] Whitaker's written exceptions to the jury instructions were separated into objections, requests for written edits, and requests for oral instructions; none of them suggests that the jury charge inadequately outlined the law regarding intent. There simply was no objection that the charge lacked clarity or that it was confusing. Indeed, after she instructed the jury and received defendant's objections, the trial justice discussed those objections with counsel on the record; defendant made no additional objections.

Because it was incumbent upon defendant to object to the instructions before the jury began its deliberations so that the trial justice might have the opportunity to correct any errors, the failure to raise these objections at the appropriate time constrains us to conclude that they were not preserved for our review.

## IV

## Motion for Judgment of Acquittal

At trial, defendant made a motion for judgment of acquittal on counts five, seven, and eight, which were for assaulting Robinson with a dangerous weapon, using a firearm in the commission of a crime of violence, and discharging a firearm in the commission of a crime of violence. He maintains that those counts require the impermissible pyramiding of inferences. The motion was denied, and defendant argues that that denial was error.

---

[6] Although defendant did mention the confusing nature of the jury instructions during the hearing on his motion for new trial, he did so only as a reminder to the trial justice that her analysis as the thirteenth juror required her to consider the evidence in light of the jury instructions. He specifically said that he stood by his earlier objections to the instructions.

# A

## Standard of Review

When we review the denial of a motion for judgment of acquittal on appeal, we use the same standard used by the trial justice. Abdullah, 967 A.2d at 474 (citing State v. Day, 925 A.2d 962, 974 (R.I. 2007)). That is, "we view the evidence in the light most favorable to the state, according full credibility to its witnesses, and we draw 'all reasonable inferences consistent with guilt.'" Id. (quoting Day, 925 A.2d at 974). "If the evidence, construed in the light most favorable to the prosecution, is insufficient to establish the defendant's guilt beyond a reasonable doubt, a motion for a judgment of acquittal should be granted." State v. Texieira, 944 A.2d 132, 140 (R.I. 2008) (citing Day, 925 A.2d at 974). "If, however, a reasonable juror could find the defendant guilty beyond a reasonable doubt, the motion should be denied." Id. (citing Day, 925 A.2d at 974).

# B

## Discussion

This Court "previously ha[s] held that 'it is possible for the state to prove guilt by a process of logical deduction, reasoning from an established circumstantial fact through a series of inferences to the ultimate conclusion of guilt.'" State v. Vargas, 21 A.3d 347, 353 (R.I. 2011) (quoting State v. Caruolo, 524 A.2d 575, 581-82 (R.I. 1987)). "It is only when, during this deduction process, 'the initial inference in the pyramid rests upon an ambiguous fact that is equally capable of supporting other reasonable inferences clearly inconsistent with guilt,' that '[t]he pyramiding of inferences * * * becomes speculative * * * and thus insufficient to prove guilt beyond a reasonable doubt.'" Id. (quoting Caruolo, 524 A.2d at 582).

In Vargas, 21 A.3d at 349, 352, a defendant was charged with delivery of a controlled substance and argued in a motion for judgment of acquittal that the prosecution's evidence required pyramiding inferences because a detective who witnessed the exchange did not actually see exactly what was delivered. However, we affirmed the denial of the motion by the trial justice because there was corroborating circumstantial evidence, so "'rather than deducing guilt from an ambiguous circumstantial fact, the state established a pattern of corroborating circumstances' sufficient to justify a reasonable juror in finding defendant guilty beyond a reasonable doubt." Id. at 354 (quoting Caruolo, 524 A.2d at 582).

According to defendant, the state's theory in this case is dependent on an inference that no other guest at the party had a gun in his or her possession, which relies on the lack of evidence showing that anyone else was armed. From that, he contends, the jury must infer that Robinson's gun was not fired, that some other gun was fired, and that, therefore, Whitaker must have fired that weapon. We disagree with defendant's contention that this impermissibly pyramids inferences.

Robinson, Isom, and Richardson all testified that defendant had a firearm at the apartment. Robinson and Isom both testified that Whitaker's gun was a .22-caliber long-nosed revolver and that it was he who suggested taking Jackson's chain. An expert testified that all of the bullets retrieved from the victims that night were consistent with a .22-caliber weapon. Toby testified that he did not feel Robinson's gun discharge as he held it during the fracas, and Robinson testified that his weapon was a .357-caliber short-nosed revolver that was not fired that night. All of the other guests who testified said that they were unarmed and that they did not see anyone else with a gun that night. In our opinion, the inferences that defendant attempts to

challenge are based on the direct and circumstantial evidence, rather than pyramided on an ambiguous fact. See Vargas, 21 A.3d at 354.

To the extent that defendant suggests that, despite the consistent testimony of the witnesses that no one saw a gun in the hands of any partygoer other than Robinson and Whitaker, the lack of explicit testimony that no one else had a gun renders the evidence insufficient, we observe that such direct evidence is not necessary because circumstantial evidence is sufficient. See State v. Robat, 49 A.3d 58, 74 (R.I. 2012) ("[T]he prosecution may rely entirely on circumstantial evidence 'without disproving every possible speculation or inference of innocence as long as the totality of the circumstantial evidence offered constitutes proof of guilt beyond a reasonable doubt.'" (quoting Caruolo, 524 A.2d at 581)).

Given the prism through which the trial justice and this Court view a motion for judgment of acquittal, that is, taking the evidence and reasonable inferences in the light most favorable to the state, we hold that the trial justice did not err when she denied the motion for judgment of acquittal.

## V

### Custody Instruction

After the jury entered the courtroom on the morning of the fourth day of the trial, the trial justice asked the jurors whether they had seen defendant being led from the building by state marshals. The trial transcript discloses that the jurors shook their heads negatively. Nonetheless, the trial justice imparted the following instruction to them:

> "No? Okay. The fact is that when someone—when any defendant is facing these kinds of charges, we do have them escorted to and from the building with state marshals, so I just wanted to make sure if you did notice that, just ignore it. I mean, the fact that someone is being escorted in and out of the building for security reasons by marshals really has nothing to do with

- 20 -

whether or not he's guilty or innocent. So, if you did spot that, just ignore it. Okay? Don't let it have any influence on you either way. You can see that we have marshals here in the courtroom, and that is just part of the legal process. It doesn't mean one way or the other that he's more likely to be guilty or not. And, if you happen to see that some night going out when you're getting on the bus, just ignore it."

The record is devoid of any indication that the trial justice informed defendant that she intended to impart this instruction. The defendant now asserts before this Court that the trial justice committed reversible error when she did so.

## A

### Standard of Review

This Court will review de novo "questions of law and mixed questions of law and fact involving constitutional issues." State v. Snell, 892 A.2d 108, 115 (R.I. 2006) (citing State v. Campbell, 691 A.2d 564, 569 (R.I. 1997)). In previous cases, we have said that informing the jury that a defendant is in custody may impair the presumption of innocence that "is a basic component of a fair trial under our system of criminal justice." See id. (quoting Estelle v. Williams, 425 U.S. 501, 503 (1976)); see also State v. Moosey, 504 A.2d 1001, 1004-06 (R.I. 1986); State v. Fenner, 503 A.2d 518, 521-23 (R.I. 1986). We accordingly will review the instruction in this case de novo.

## B

### Discussion

"The right to a fair trial by an impartial jury is guaranteed by the Sixth Amendment to the United States Constitution, applicable to the states through the Due Process Clause of the Fourteenth Amendment, and by article 1, section 10, of the Rhode Island Constitution." Snell, 892 A.2d at 115 (citing State v. Ordway, 619 A.2d 819, 826 (R.I. 1992)). The presumption of

innocence is a part of the right to a fair trial, so "courts are under a duty to apply 'close judicial scrutiny' to evaluate the likely effects of particular procedures that may diminish a defendant's presumption of innocence." Id. (quoting Estelle, 425 U.S. at 504).

In Fenner, 503 A.2d at 521-22, we considered the effect of an instruction to the jury that a criminal defendant was in custody. In that case, a trial justice notified counsel that she intended to disclose to the jury that the defendant was in custody and, hearing no objection, then informed the jury that defendant was in custody, that often people are in custody because they cannot post bail, and that it was important that the jury regard the defendant's custodial status as a neutral fact. Id. at 521. No objection was lodged immediately after the instruction was given, although, after a recess, counsel objected and moved to pass the case. Id. The trial justice denied the motion and the issue eventually was considered by this Court on appeal. Id. Based on the content of the instruction, we said that "the entire rationale underlying the structure of jury trials and the lyrical deference that is paid to jury findings rests upon the proposition that jurors will obey the admonitions of the trial justice and will apply the law as given to them by the justice presiding." Id. at 522. Because the trial justice's comments "were not so inherently inflammatory or prejudicial as to render the jurors incapable of following the instruction," and because there had been no objection interposed by the defendant, we held that the comments did not amount to reversible error. Id. at 522-23.[7]

Our opinion in Fenner, however, instructed trial justices of the procedure they should use in the future when contemplating such an instruction. Fenner, 503 A.2d at 522. We said that "it

---

[7] More recently, in State v. Snell, 892 A.2d 108 (R.I. 2006), we considered whether a defendant's right to a fair trial was undermined by his appearance in prison attire, and we "recognized that a trial justice's reference to a defendant's incarceration may not be reversible error when a cautionary instruction is sufficient to negate any potential prejudice." Id. at 116 (citing State v. Fenner, 503 A.2d 518, 522 (R.I. 1986)).

should be the obligation of a trial justice" to notify counsel prior to informing the jury that a defendant is in custody, and, if counsel objects, then the trial justice should not give the instruction. Id. If a defendant objects and the instruction is not given, we noted, then that defendant "assumes the risk" that jurors may see him or her being transported in custody. Id.; see also State v. Bleau, 649 A.2d 215, 219 (R.I. 1994) (affirming the denial of a motion to pass after a defendant had declined a custody instruction at the start of trial, jurors had seen him in handcuffs, and the trial justice gave a cautionary instruction). We also admonished that the trial justice should be prepared to give a cautionary instruction if a defendant is seen in custody and then requests such an instruction. See Fenner, 503 A.2d at 522; see also Bleau, 649 A.2d at 219. We made clear in Fenner, 503 A.2d at 522, however, that the choice of whether a custody instruction is given should be the defendant's and "should be exercised before the admonition is given, not afterward."[8]

Unfortunately, the trial justice in this case did not follow the clearly outlined procedure that was set forth by this Court in Fenner, 503 A.2d at 522. That being said, we must now determine if reversible error has occurred as a result of the trial justice's sua sponte admonition to the jury. After a thorough review of the record and serious consideration of this issue, it is our opinion that reversible error has not occurred.

---

[8] We declined to apply the Fenner standard in State v. Moosey, 504 A.2d 1001, 1004-05 (R.I. 1986), a case in which the trial justice notified the jury over a defendant's objection that the defendant was in custody. Because Fenner had not been decided when the trial took place, we declined to apply the procedure outlined in that case, and, based on the facts of Moosey, we held that the instruction was not reversible error. Id. at 1005. Even while holding that there was no reversible error, "[w]e seriously question[ed] the necessity for and the advisability of informing a jury in every case that a defendant is in custody" because "[o]ur time-honored practice has been not to mention incarceration to the jury unless it is done as a curative instruction when [the] defendant has been seen in custody by jurors." Id.

It is of course true that the failure of the trial justice to follow the course prescribed in Fenner deprived defendant of the opportunity to object to anything being said at all. See Fenner, 503 A.2d at 522. However, the record also reveals that once the ill-advised sua sponte instruction was given, defendant neither objected to the fact that it was imparted or to its content, nor did he move to pass the case. See State v. Burke, 529 A.2d 621, 627 (R.I. 1987).

The instruction in this case informed the jury that the fact that defendant was being escorted by state marshals "for security reasons" had nothing to do with his guilt or innocence and was to be regarded by them as neutral. In our opinion, the instruction was "not so inherently inflammatory or prejudicial as to render the jurors incapable of following [it]." Fenner, 503 A.2d at 522. We therefore hold, as we did in Fenner, and without retreating in any way from our holding in that case, that despite the trial justice's apparent decision to give the instruction without warning, because of the particular instruction, the facts of the case, and defendant's failure to protest in any way, the trial justice did not commit reversible error. See id.

We will reiterate that the jury may not need to be informed in every case that a defendant is in custody. See Moosey, 504 A.2d at 1005. We also caution the justices of the Superior Court that they should avoid notifying the jury that a defendant is in custody without first making clear on the record that the Fenner procedure has been followed. See Fenner, 503 A.2d at 522.

## VI

### Evidentiary Objections

Leading questions, defendant argues, were used so pervasively by the state that witnesses were effectively "coached," which should cause this Court to grant him a new trial. Indeed, according to defendant, leading questions were so numerous that it would not be possible to list

- 24 -

them all for this Court. The defendant further argues that the trial justice's failure to record several bench conferences warrants a new trial.

**A**

**Standard of Review**

"A leading question is most generally defined as a question that suggests the desired answer." State v. Gomes, 764 A.2d 125, 137 (R.I. 2001) (quoting State v. Girouard, 561 A.2d 882, 888 (R.I. 1989)). "The danger of a leading question is that it may suggest to the witness the specific tenor of the reply desired by counsel and such a reply may be given irrespective of actual memory." Girouard, 561 A.2d at 888 (citing Urbani v. Razza, 103 R.I. 445, 448, 238 A.2d 383, 385 (1968)). "While it is true that as a general rule leading questions are prohibited on direct examination, a trial justice has considerable latitude in sustaining or overruling objections to leading questions." Gomes, 764 A.2d at 137 (quoting Girouard, 561 A.2d at 888). Similar to other decisions focusing on how evidence is received at trial, a trial justice's decision regarding the use of leading questions "will be overturned only upon an abuse of discretion or where there is substantial injury to the defendant." Id. (quoting Girouard, 561 A.2d at 888).

"Bench conferences frequently serve to permit the court and counsel to resolve some nonevidentiary matter, such as housekeeping problems with exhibits or difficulties with witness availability or other rather inconsequential procedural questions." State v. D'Alo, 435 A.2d 317, 321 (R.I. 1981). Stenographic recording is not necessary for bench conferences dealing with such matters. Id. "Occasionally, however, the court may also resolve more serious matters at the side bar, such as evidentiary objections or objections to the judge's jury instructions." Id. "Although it is within the discretion of the trial justice to allow or not to allow counsel to raise such material matters at bench conferences, when convenience and efficiency are served thereby,

such conferences may be allowed and should be recorded." Id. For a party to persuade this Court that the failure to record bench conferences justifies relief, a party "must at least set forth the matters allegedly raised and the manner in which he was prejudiced by the fact that the bench conferences were not recorded." Id. Without that information about the error that went unrecorded or prejudice that may have been created, we have no basis on which to grant relief. See id. (citing State v. Mastracchio, 112 R.I. 487, 497, 312 A.2d 190, 196 (1973)).

Our cases and rules require that a party make an objection on the record in the trial court, "stating the specific ground of objection, if the specific ground was not apparent from the context." State v. Reyes, 984 A.2d 606, 613 (R.I. 2009) (quoting R.I. R. Evid. 103(a)(1)). "A party who fails to assert his specific objections is deemed to have waived his rights on appeal." Id. (quoting State v. Long, 488 A.2d 427, 432 (R.I. 1985)).

## B

## Discussion

## 1

## Leading Questions

As stated above, a leading question is one that suggests a desired answer. Gomes, 764 A.2d at 137. In Gomes, we considered objections to purportedly leading questions posed during redirect, and, even though the questions "clearly were leading and improper, the facts elicited by those questions already were in evidence." Id. We therefore held that "there was no substantial injury to defendant" and it was not an abuse of discretion to allow the questions. Id. (quoting Girouard, 561 A.2d at 888). In Girouard, we similarly held that certain questions were leading but that they did not substantially injure the objecting party, either because the question reiterated or was based on testimony that had just been given or because the witness refused to

- 26 -

be led. <u>Girouard</u>, 561 A.2d at 888-89; <u>see</u> <u>also</u> <u>State v. Toole</u>, 640 A.2d 965, 975 (R.I. 1994) (determining that there was no substantial injury because the first part of a question "was intended to orient those in the courtroom to the point reached prior to the recess").

Despite defendant's assertion that examples of leading questions were too numerous to list, we have examined the record and have been unable to discern the asserted abundance of leading questions to which defendant lodged specific objections that were then overruled. We point out that the trial justice sustained numerous of defendant's objections and admonished the prosecutor to stop leading the witnesses.[9] Because the conduct of a trial and the admission of evidence therein are within the trial justice's discretion, and because we have held that a

---

[9] After an objection to the prosecutor's question was sustained on leading grounds, the prosecutor asked to be heard at sidebar. There, he explained that his understanding of the definition of a leading question did not encompass the questions to which objections had been raised. The trial justice then said:

> "Part of the problem is that I've had to sustain a number of objections. I've had to admonish you a number of times. I've done that on the record. I have done that at bench conferences. Unfortunately, I'm now at the point where I'm assuming the wors[t]. You've been leading throughout the course of the trial. Granted some of it has been on minor background problems. I don't think anybody cares much about that. But, there have been areas and times when you've sent out a definite cue to the witness. It's hard for me to tell at this point whether that's what's happening or whether this is a minor issue. That's one of the reasons I've been asking you all along to stop leading, but you keep doing it.

> " * * *

> "We'll all do better if counsel accepts my guidance. I don't like to interfere with what attorneys do. Sometimes attorneys don't want to raise objections for whatever reason. But, on the other hand, when I see a situation where I feel that counsel feels hamstrung on making an objection because of the problem that the objection underscores, I feel like I have to say something. I think we're all better if we just stick to the rules and then we don't have to worry about these kinds of discussions."

- 27 -

"substantial injury" does not occur when a question merely reiterates testimony already in evidence or orients the courtroom to previously given testimony, it is our opinion that the use of leading questions in this case does not warrant a new trial. See Gomes, 764 A.2d at 137; Toole, 640 A.2d at 975; Girouard, 561 A.2d at 888-89. We are not convinced that the leading questions employed in this matter amounted to "coaching" of the witnesses, as defendant asserts; we instead have determined that the trial justice's conduct of the interrogation was within the bounds of her discretion.

**2**

**Bench Conferences**

We also are not persuaded that defendant is entitled to a new trial because certain bench conferences were not placed on the record. In the record, there appears to have been approximately fifteen unrecorded bench conferences, and defendant himself requested five of those. Whitaker takes issue with certain bench conferences that went unrecorded but during which, he argues, the trial justice made evidentiary rulings. The defendant points to several specific unrecorded bench conferences in the record, and he argues that it is impossible to know either the basis for the objection interposed or the reason for the trial justice's disposition of the objection. However, defendant overlooks the fact that it is his duty to lodge specific objections on the record if he wishes to preserve them for appeal. See Rule 103(a)(1); Reyes, 984 A.2d at 613.

In D'Alo, 435 A.2d at 321, the defendant requested many bench conferences during trial and asked that they all be placed on the record; the trial justice declined, reasoning that it was not necessary. On appeal, the defendant was unable to "set forth the matters allegedly raised and the manner in which he was prejudiced by the fact that the bench conferences were not recorded."

Id. Because we had no "representations of facts that would establish error or prejudice, there [wa]s no basis for granting relief to the defendant * * * ." Id. Here, defendant similarly argues that unrecorded bench conferences warrant a new trial not because of any specific error made during those bench conferences, but rather by the mere fact that they went unrecorded. See id. But, defendant fails to explain what was said during the bench conferences and how he was prejudiced by the lack of recording, as he is required to explain according to D'Alo. See id. Thus, there is nothing for us to review.

Although we reiterate that bench conferences during which evidentiary rulings are made should be recorded, this requirement does not excuse counsel from setting forth on the record the specific grounds for his or her objections, see Rule 103(a)(1); Reyes, 984 A.2d at 613, nor does it absolve a party from providing a record to this Court of what went unrecorded and how it prejudiced defendant, see D'Alo, 435 A.2d at 321.

## VII

### Aggregate Errors

The defendant contends that the errors in this case, considered in the aggregate, warrant reversal. We do not agree. In State v. Ashness, 461 A.2d 659, 672 (R.I. 1983), we declined a defendant's invitation to aggregate purported errors and hold that the defendant had been denied a fair trial. Although we had determined that the trial justice there had erred, that single error alone was not sufficient to warrant reversal, and the same result was no more obtainable by combining the single error with other rulings that were not erroneous. Id. at 666-67, 672. Here, the failure of the trial justice to follow the procedure set forth in Fenner, 503 A.2d at 522, before disclosing to the jury that the defendant was in custody is not enough on its own to warrant

reversal and it cannot be combined with her other rulings, which were not erroneous, to occasion the vacating of the judgment of conviction. See Ashness, 461 A.2d at 672.

## VIII

## Conclusion

For the preceding reasons, we affirm the judgment of conviction. The papers shall be returned to the Superior Court.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**      State v. Kendall Whitaker.

**CASE NO:**      No. 2007-145-C.A.
(P1/04-145BG)

**COURT:**      Supreme Court

**DATE OPINION FILED:**  November 13, 2013

**JUSTICES:**      Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**      Associate Justice Francis X. Flaherty

**SOURCE OF APPEAL:**   Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Patricia A. Hurst

**ATTORNEYS ON APPEAL:**

For State:  Virginia M. McGinn
Department of the Attorney General

For Defendant:  Randy Olen, Esq.